**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Clipper Pipe & Service, Inc. | : | CIVIL ACTION |
| v. | : | |
| The Ohio Casualty Insurance Co. and | : | |
| Contracting Systems, Inc. II | : | NO. 12- |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                             ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)

| | | |
|---|---|---|
| October 10, 2012 | Patrick T. Henigan, Esquire | Clipper Pipe & Service, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-565-3700 | 610-565-1596 | phenigan@eckellsparks.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Clipper Pipe & Service, Inc. | Ohio Casualty Insurance Company<br>Contracting systems, Inc. II |

**(b)** County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Cumberland
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Patrick T. Henigan, Esquire
344 West Front Street, Media, PA  19063, 610-565-3700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION   *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                           *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☒ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury<br>☐ 362 Personal Injury -<br>  Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>  Exchange |
| | | | **LABOR** | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| | | | ☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>  Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>  Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>  Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 448 Education | ☐ 510 Motions to Vacate<br>  Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus -<br>  Alien Detainee<br>  (Prisoner Petition)<br>☐ 465 Other Immigration<br>  Actions | ☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | Act/Review or Appeal of<br>  Agency Decision<br>☐ 950 Constitutionality of<br>  State Statutes |

## V. ORIGIN   *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
*(specify)*

☐ 6  Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
40 USC 3131-3134

Brief description of cause:
Failure to pay on Payment Bond

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
149,890.12  +atty fees

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*    JUDGE _____    DOCKET NUMBER _____

DATE   14/11/12

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Clipper Pipe & Service Inc.          :

         V.          :          Civil Action
The Ohio Casualty Insurance Co.          :          No: 12-_____
and          :
Contracting Systems, Inc. II

DISCLOSURE STATEMENT FORM

Please check one box:

☑          The nongovernmental corporate party, *Clipper Pipe+Service, Inc.*
          , in the above listed civil action does not have any parent corporation and
          publicly held corporation that owns 10% or more of its stock.

❑          The nongovernmental corporate party, _____
          , in the above listed civil action has the following parent corporation(s) and
          publicly held corporation(s) that owns 10% or more of its stock:

_____
_____
_____
_____

October 10, 2012          _____
Date                                                  Signature

          Counsel for:   Plaintiff, Clipper Pipe & Service, Inc.
                                        _____

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**
    (a)   WHO MUST FILE; CONTENTS.  A nongovernmental corporate party must file
          two copies of a disclosure statement that:
        (1)   identifies any parent corporation and any publicly held corporation
                    owning 10% or more of its stock;  or

        (2)   states that there is no such corporation.

    (b) TIME TO FILE; SUPPLEMENTAL FILING.  A party must:
        (1)   file the disclosure statement with its first appearance, pleading,
                    petition, motion, response, or other request addressed to the court;
                    and

        (2)   promptly file a supplemental statement if any required information
                    changes.

IN THE UNITED STATES DISTRICT COURT
FOR THE EATERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIPPER PIPE & SERVICE, INC. | |
| Plaintiff | Civil Action No.:  12- |
| v. | |
| THE OHIO CASUALTY INSURANCE COMPANY  and | Jury Demanded |
| CONTRACTING SYSTEMS, INC. II | |
| Defendant | |

## **COMPLAINT**

### **THE PARTIES**

1.  Plaintiff, Clipper Pipe & Service, Inc., ("Clipper") is a Pennsylvania corporation with a business mailing address of Post Office Box 148, Crum Lynne, PA 19022.

2.  Defendant, the Ohio Casualty Insurance Company, ("Ohio") is a duly registered Corporation organized under the laws of the State of Ohio which is licensed to do business in Pennsylvania with a business address at 275 Grandview Avenue, Suite 102, Camp Hill, PA 17011.

3.  Defendant, Contracting Systems, Inc. II, ("CSI") is a corporation registered under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 472 California Road, Quakertown PA 18951.

### JURISDICTION AND VENUE

4.  The Court has jurisdiction of this action under 40 U.S.C. § 3133(b).

5.  The Court has supplemental jurisdiction over all other claims in this action as provided by 28 U.S.C. § 1367.

6. Venue of this action is proper in this Court pursuant to 40 U.S.C. § 3133(b)(3)(B) as the contract at issue was to be performed in the Eastern District of Pennsylvania.

THE PROJECT

7. Clipper's claims for payment against CSI and Ohio arise out of the construction and renovation project for the United States Department of Navy more commonly known as the Navy/Marine Corps Reserve Training Center located in Lehigh Valley, PA.

8. It is averred upon information and belief that on or about April 30, 2010, the Department of Navy awarded a construction contract to CSI for work to be performed at the location identified above.

9. In connection therewith, and as required under 40 U.S.C. § 3131(b)(2) CSI, as principal, and Ohio, as Surety, furnished and delivered to the United States of America a payment Bond, OMB No. 9000 – 0045 (the "Payment Bond") in the amount of $79,260,000. A true and correct copy of the Payment Bond is attached hereto and made a part hereof as Exhibit "A".

10. On or about January 25, 2011, Clipper entered into a subcontract with CSI for the performance of specific HVAC and mechanical work in relation to the Project. A true and correct copy of the subcontract is attached hereto and made a part hereof as Exhibit "B".

11. All of the work required by the subcontract has been completed, incorporated into the project and accepted by both CSI and the Department of Navy.

12. On or about February 22, 2012, Clipper submitted to CSI an Application for Payment. A true and correct copy of the application for payment is attached hereto and made a part here of as Exhibit "C".

13. Prior to May 30, 2012, Clipper made demand for final payment under the contract.

14. To date, CSI has failed to pay the sums due and owing which total $149,890.12.

15. It is averred upon information and belief that CSI has received payment from the Department of Navy for the work performed by Clipper.

## STATEMENT CLAIMS
## COUNT I- BREACH OF CONTRACT
### (Clipper v. CSI)

16. . Clipper incorporates by reference the averments contained in paragraphs 1 through 15 as if fully set forth herein.

17. The total amount due and owing Clipper for work performed, completed and accepted pursuant to the subcontract is $149,890.12.

18. CSI's failure to pay Clipper any of the sums due is a material breach of the subcontract.

19. The breach of the subcontract has caused damages and economic harm to Clipper.

20. All conditions precedent to Clipper's right to claim for payment and to have judgment entered in its favor and against CSI in the principal amount of $149,890.12 plus interest have occurred and/or been performed, satisfy, excuse, waived and otherwise discharged.

WHEREFORE, Plaintiff Clipper Pipe & Service, Inc. demands judgment be entered in its favor and against Defendant Contracting Systems, Inc. II in the principal amount of $149,890.12 plus interest, cost and other relief the court deems appropriate.

## COUNT II - QUANTUM MERUIT
### (Clipper v. CSI)

21. Clipper incorporates by reference the averments contained in paragraphs 1 through 20 as if fully set forth herein.

22. At the request of, and with the knowledge of, CSI, Clipper provided CSI with valuable labor and material that CSI was required to provide to the Department of Navy in connection with the Project.

3

23. Such labor and material were furnished by Clipper with the expectation of payment and not as a volunteer.

24. Such labor and material provided a substantial benefit to CSI.

25. Should the Court for some reason determined there was no contract between Clipper and CSI for the payment for work performed by Clipper, Clipper will have no adequate remedy at law, and it would be inequitable and unjust to allow CSI to retain the benefit that Clipper bestowed upon CSI which has a reasonable value of at least $149,890.12 without making payment for said benefit.

26. Despite demand, CSI has refused and continues to refuse to make payments to Clipper.

WHEREFORE, Plaintiff, Clipper Pipe & Service, Inc., demands judgment be entered in its favor and against Defendant, Contracting Systems, Inc. II, in the principal amount of $149,890.12 plus interest, cost and other relief the court deems appropriate.

COUNT III - VIOLATION PENNSYLVANIA'S CONTRACTOR AND
SUBCONTRACTOR PAYMENT ACT
(Clipper v. CSI)

27. Clipper incorporates the averments contained in paragraphs 1 through 26 as if fully set forth herein.

28. CSI is a "Contractor" within the meaning of 73 Pa.C.S.A. § 502 of the Pennsylvania Contractor and Subcontractor Payment Act (the "Act").

29. Clipper is a "subcontractor" within the meaning of Section 502 of the Act.

30. Is averred upon information and belief that CSI has received payment of at least $149,890.12 from the Department of Navy for work performed by Clipper that CSI has failed to pay to, and is wrongfully withholding from Clipper in violation of the Act.

4

31. Under Section 507(d) of the Act, CSI is obligated to Clipper for interest on the $149,890.12 to Clipper at the rate of one percent (1%) per month until such amount is paid.

32. Under section 512(a) of the Act, CSI is also obligated to pay a penalty to Clipper at the rate of one percent (1%) per month on the amount that CSI has received from the Department of Navy but wrongfully withheld from Clipper. The penalty continues to accrue until all sums are paid.

33. Under Section 512(b) of the Act, should Clipper substantially prevail on its claim for the amount due under the contract, CSI will become liable to Clipper for reasonable attorney's fees in an amount yet to be determined.

WHEREFORE, Plaintiff, Clipper Pipe & Service, Inc., demands judgment be entered in its favor and against Defendant, Contracting Systems, Inc. II, in the principal amount of $149,890.12 plus interest, attorney's fees, penalties, costs and other relief the court deems appropriate.

COUNT IV-PAYMENT BOND<br>(Clipper v. Ohio)

34. Clipper incorporates by reference the averments contained in paragraphs 1 through 33 as if fully set forth herein.

35. Clipper furnished labor and material to CSI for the Project in accordance with the subcontract.

36. The amount due and owing Clipper for labor and materials furnished on the Project is $149,890.12.

37. The Payment Bond is for the protection of all persons supplying labor and material in carrying out the work provided for in CSI's contract with the Department of Navy for the Project.

38. By letter dated May 22, 2012, Clipper notified Ohio of its claim under the Payment Bond. A true and correct copy of the letter attached hereto and made a part hereof as Exhibit "D".

5

39. Thereafter, Clipper provided Ohio the additional information requested regarding Clipper's claim. A true and correct copy of the Proof of Claim is attached hereto and made a part here of as Exhibit "E".

40. As of the filing of this Complaint, Clipper has not received payment from Ohio for any part of the sums due and owing from CSI.

41. All conditions precedent to Clipper's right to claim and have judgment entered in its favor and against Ohio on the Payment Bond have been fully performed and satisfied, excuse, waived or otherwise discharged.

WHEREFORE, Plaintiff Clipper Pipe & Service, Inc. demands judgment be entered in its favor and against Defendant Ohio Casualty to be Insurance Company in the principal amount of $149,890.12 plus interest, cost and other relief the court deems appropriate.


Dated: October 9, 2012          By:

Patrick T.  Henigan, Esquire
Attorney I.D. #49448
ECKELL, SPARKS, LEVY, AUERBACH, MONTE,
SLOANE, MATTHEWS & AUSLANDER, P.C.
344 West Front Street
Media, PA  19063
610-565-3700 (phone)
phenigan@eckellsparks.com
Attorney for Plaintiff,
Clipper Pipe & Service, Inc.

MAY-07-2010  10:40                                                                                                       P.004

Bond No. 4-055-855

| PAYMENT BOND *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* May 5, 2010 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X"one)* | |
|---|---|---|
| Contracting Systems, Inc. II<br>472 California Road<br>Quakertown, PA 18951 | ☐ INDIVIDUAL    ☐ PARTNERSHIP<br>☐ JOINT VENTURE    ☒ CORPORATION<br>STATE OF INCORPORATION<br>Pennsylvania | |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| The Ohio Casualty Insurance Company<br>275 Grandview Avenue, Suite 102<br>Camp Hill, PA 17011 | MILLION(S) -----5 | THOUSAND(S) ----584 | HUNDRED(S) ----000 | CENTS ----00 |
| | CONTRACT DATE April 30, 2010 | CONTRACT NO. N40085-10-C-9436 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| Contracting Systems, Inc. II | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *(Seal)* | 2. *(Seal)* | 3. *(Seal)* | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. John W. Clarke, President | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. *(Seal)* | 2. *(Seal)* | |
| NAME(S) *(Typed)* | 1. | 2. | |

| | CORPORATE SURETY(IES) | | |
|---|---|---|---|
| SURETY A | NAME & ADDRESS | The Ohio Casualty Insurance Company | STATE OF INC. Ohio | LIABILITY LIMIT $ 79,260,000.00 | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Jonathan F. Black, Attorney-in-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION<br>Previous edition is usable

STANDARD FORM 25A (REV. 10-98)<br>Prescribed by GSA-FAR (48 CFR) 53.2228(c)

EXHIBIT "A"

| CORPORATE SURETY(IES) *(Continued)* | | | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S)) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated

"SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV.10-98) BACK

MAY-07-2010  10:40                                                                                       P.006

## CERTIFIED COPY OF POWER OF ATTORNEY
### THE OHIO CASUALTY INSURANCE COMPANY
### WEST AMERICAN INSURANCE COMPANY

No. 41-405

**Know All Men by These Presents:**  That THE OHIO CASUALTY INSURANCE COMPANY, an Ohio Corporation, and WEST AMERICAN INSURANCE COMPANY, an Indiana Corporation, pursuant to the authority granted by Article III, Section 9 of the Code of Regulations and By-Laws of The Ohio Casualty Insurance Company and West American Insurance Company, do hereby nominate, constitute and appoint: Christine M. King, Peter P. King or Jonathan F. Black of Ft Washington, Pennsylvania its true and lawful agent (s) and attorney (s)-in-fact, to make, execute, seal and deliver for and on its behalf as surety, and as its act and deed any and all BONDS, UNDERTAKINGS, and RECOGNIZANCES excluding, however, any bond(s) or undertaking(s) guaranteeing the payment of notes and interest thereon

And the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Companies at their administrative offices in Fairfield, Ohio, in their own proper persons.

The authority granted hereunder supersedes any previous authority heretofore granted the above named attorney(s)-in-fact.

In WITNESS WHEREOF, the undersigned officer of the said The Ohio Casualty Insurance Company and West American Insurance Company has hereunto subscribed his name and affixed the Corporate Seal of each Company this 23rd day of July, 2008.

                                                         *Sam Lawrence*

                                                                                 Sam Lawrence, Assistant Secretary

STATE OF OHIO,
COUNTY OF BUTLER

On this 23rd day of July, 2008 before the subscriber, a Notary Public of the State of Ohio, in and for the County of Butler, duly commissioned and qualified, came Sam Lawrence, Assistant Secretary of THE OHIO CASUALTY INSURANCE COMPANY and WEST AMERICAN INSURANCE COMPANY, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and he acknowledged the execution of the same, and being by me duly sworn deposes and says, that he is the officer of the Companies aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and the said Corporate Seals and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at the City of Hamilton, State of Ohio, the day and year first above written.

                                                                   *Cheryl S. Gregory*

                                                                       Notary Public in and for County of Butler, State of Ohio
                                                                       My Commission expires August 5, 2012.

This power of attorney is granted under and by authority of Article III, Section 9 of the Code of Regulations and By-Laws of The Ohio Casualty Insurance Company and West American Insurance Company, extracts from which read:

Article III, Section 9.  *Appointment of Attorneys-in-Fact.*  The Chairman of the Board, the President, any Vice-President, the Secretary or any Assistant Secretary of the corporation shall be and is hereby vested with full power and authority to appoint attorneys-in-fact for the purpose of signing the name of the corporation as surety to, and to execute, attach the seal of the corporation to, acknowledge and deliver any and all bonds, recognizances, stipulations, undertakings or other instruments of suretyship and policies of insurance to be given in favor of any individual, firm, corporation, partnership, limited liability company or other entity, or the official representative thereof, or to any county or state, or any official board or boards of any county or state, or the United States of America or any agency thereof, or to any other political subdivision thereof

This instrument is signed and sealed as authorized by the following resolution adopted by the Boards of Directors of the Companies on October 21, 2004:

RESOLVED, That the signature of any officer of the Company authorized under Article III, Section 9 of its Code of Regulations and By-laws and the Company seal may be affixed by facsimile to any power of attorney or copy thereof issued on behalf of the Company to make, execute, seal and deliver for and on its behalf as surety any and all bonds, undertakings or other written obligations in the nature thereof; to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment. Such signatures and seal are hereby adopted by the Company as original signatures and seal and shall, with respect to any bond, undertaking or other written obligations in the nature thereof to which it is attached, be valid and binding upon the Company with the same force and effect as though manually affixed.

## CERTIFICATE

I, the undersigned Assistant Secretary of The Ohio Casualty Insurance Company and West American Insurance Company, do hereby certify that the foregoing power of attorney, the referenced By-Laws of the Companies and the above Resolution of their Boards of Directors are true and correct copies and are in full force and effect on this date.

IN WITNESS WHEREOF, I have hereunto set my hand and the seals of the Companies this ____5th____ day of ____May____ 2010

                                              *Mark E. Schmidt*

                                                                                         Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees.

To confirm the validity of this Power of Attorney call 1-513-867-3477 between 9:00 am and 4:30 pm EST on any business day.

# THE OHIO CASUALTY INSURANCE COMPANY

## FINANCIAL STATEMENT - DECEMBER 31, 2009

| ASSETS | | 2009 |
|---|---|---|
| Cash | $ | 304,286,770.00 |
| Bonds | | 3,530,250,767.00 |
| Stocks | | 366,895,568.00 |
| Mortgage Loans on Real Estate | | 95,958,941.00 |
| Real Estate (less encumbrances ) | | 22,877,333.00 |
| Premiums and Considerations | | 658,040,386.00 |
| Investment Income Due and Accrued | | 44,681,606.00 |
| Reinsurance Recoverable | | 14,200,483.00 |
| Other Assets | | 240,012,277.00 |
| Total Assets | | $ 5,277,204,131.00 |

| LIABILITIES | | |
|---|---|---|
| Reserve for Outstanding Losses | | $ 2,497,852,401.00 |
| Reserve for Unearned Premiums | | 938,631,360.00 |
| Reserve for Taxes and Expenses | | 193,680,470.00 |
| Ceded Reinsurance Premium Payable | | 24,425,143.00 |
| Other Liabilities | | 286,443,071.00 |
| Total Liabilities | | $ 3,941,032,445.00 |
| Capital Stock | $    4,500,000.00 | |
| Net Surplus | 1,331,671,686.00 | |
| Policyholders Surplus | | $ 1,336,171,686.00 |
| Total Liabilities, Capital Stock and Surplus | | $ 5,277,204,131.00 |

---

State of Ohio      )
County of Butler ) SS.:

Gary R. Gregg being duly sworn says:  That he is President of The Ohio Casualty Insurance Company of Hamilton, Ohio;  that said Company is a corporation duly organized, existing and engaged in business as a Surety by virtue of the laws of the State of Ohio and has duly complied with all the requirements of the laws of the said State applicable to said Company and is duly qualified to act as Surety under such laws;  that said Company has also complied with and is duly qualified to act as Surety under the Act of Congress of July 30, 1947 (6 U.S.C. 6-13); that to the best of his knowledge and belief the above statement is a full, true and correct statement of the financial condition of said Company on the 31st day of December, 2009.

Sworn to before me this 25th day of February, 2010.

Cheryl S. Gregory, Notary Public
My Commission Expires August 5, 2012.

Gary R. Gregg, President

MAY-07-2010   10:40                                                                P.001

Bond No. 4-035-555

| PERFORMANCE BOND<br>(See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>May 5, 2010 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | | |
|---|---|---|---|
| Contracting Systems, Inc. II<br>472 California Road<br>Quakertown, PA  18951 | ☐ INDIVIDUAL | | ☐ PARTNERSHIP |
| | ☐ JOINT VENTURE | | ☒ CORPORATION |
| | STATE OF INCORPORATION<br>Pennsylvania | | |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| The Ohio Casualty Insurance Company<br>275 Grandview Avenue, Suite 102<br>Camp Hill, PA  17011 | MILLION(S)<br>———5 | THOUSAND(S)<br>———584 | HUNDRED(S)<br>———000 | CENTS<br>——00 |
| | CONTRACT DATE<br>April 30, 2010 | CONTRACT NO.<br>N40085-10-C-9436 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal -

(a)(1)  Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b)  Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| | Contracting Systems, Inc. II | | PRINCIPAL | | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>*(Seal)* | 2.<br>(Seal) | | 3.<br>(Seal) | | | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1.<br>John W. Clarke, President | 2. | | 3. | | | |

| | INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2.<br>(Seal) | | (Seal) |
| NAME(S)<br>(Typed) | 1. | 2. | | |

| | | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | The Ohio Casualty Insurance Company | STATE OF INC.<br>Ohio | LIABILITY LIMIT<br>$ 79,260,000.00 | Corporate<br>Seal |
| | SIGNATURE(S) | 1. | | 2. | |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1.  Jonathan F. Black, Attorney-in-Fact | | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION                                          STANDARD FORM 25 (REV 8-96)
Previous edition not usable                                                          Prescribed by GSA-FAR (48 CFR) 53.228(b)

FEB - 9 2011

| CORPORATE SURETY(IES) *(Continued)* | | | | |
|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
| | Signatures) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | |

| BOND PREMIUM ▶ | RATE PER THOUSAND ($) $12.24/$7.40/$5.87/$5.36 | TOTAL ($) $38,725.00 |
|---|---|---|

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated

"SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

MAY-07-2010  10:40                                                                    P.003

CERTIFIED COPY OF POWER OF ATTORNEY
THE OHIO CASUALTY INSURANCE COMPANY
WEST AMERICAN INSURANCE COMPANY

No. 41-405

**Know All Men by These Presents:**     That THE OHIO CASUALTY INSURANCE COMPANY, an Ohio Corporation, and WEST AMERICAN INSURANCE COMPANY, an Indiana Corporation, pursuant to the authority granted by Article III, Section 9 of the Code of Regulations and By-Laws of The Ohio Casualty Insurance Company and West American Insurance Company, do hereby nominate, constitute and appoint: Christine M. King, Peter P. Black or Jonathan F. Black of Ft Washington, Pennsylvania its true and lawful agent (s) and attorney (s)-in-fact, to make, execute, seal and deliver for and on its behalf as surety, and as its act and deed any and all BONDS, UNDERTAKINGS, and RECOGNIZANCES excluding, however, any bond(s) or undertaking(s) guaranteeing the payment of notes and interest thereon

And the execution of such bonds or undertakings in pursuance of these presents, shall be as binding upon said Companies, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Companies at their administrative offices in Fairfield, Ohio, in their own proper persons.

The authority granted hereunder supersedes any previous authority heretofore granted the above named attorney(s)-in-fact.

In WITNESS WHEREOF, the undersigned officer of the said The Ohio Casualty Insurance Company and West American Insurance Company has hereunto subscribed his name and affixed the Corporate Seal of each Company this 23rd day of July, 2008.

                                      *Sam Lawrence*

Sam Lawrence, Assistant Secretary

STATE OF OHIO,
COUNTY OF BUTLER

On this 23rd day of July, 2008 before the subscriber, a Notary Public of the State of Ohio, in and for the County of Butler, duly commissioned and qualified, came Sam Lawrence, Assistant Secretary of THE OHIO CASUALTY INSURANCE COMPANY and WEST AMERICAN INSURANCE COMPANY, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and he acknowledged the execution of the same, and being by me duly sworn deposes and says, that he is the officer of the Companies aforesaid, and that the seals affixed to the preceding instrument are the Corporate Seals of said Companies, and the said Corporate Seals and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Corporations.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at the City of Hamilton, State of Ohio, the day and year first above written.

                                                      *Cheryl S. Gregory*

Notary Public in and for County of Butler, State of Ohio
My Commission expires August 5, 2012.

This power of attorney is granted under and by authority of Article III, Section 9 of the Code of Regulations and By-Laws of The Ohio Casualty Insurance Company and West American Insurance Company, extracts from which read:

**Article III, Section 9.** *Appointment of Attorneys-in-Fact.* The Chairman of the Board, the President, any Vice-President, the Secretary or any Assistant Secretary of the corporation shall be and is hereby vested with full power and authority to appoint attorneys-in-fact for the purpose of signing the name of the corporation as surety to, and to execute, attach the seal of the corporation to, acknowledge and deliver any and all bonds, recognizances, stipulations, undertakings or other instruments of suretyship and policies of insurance to be given in favor of any individual, firm, corporation, partnership, limited liability company or other entity, or the official representative thereof, or to any county or state, or any official board or boards of any county or state, or the United States of America or any agency thereof, or to any other political subdivision thereof

This instrument is signed and sealed as authorized by the following resolution adopted by the Boards of Directors of the Companies on October 21, 2004:

**RESOLVED,** That the signature of any officer of the Company authorized under Article III, Section 9 of its Code of Regulations and By-laws and the Company seal may be affixed by facsimile to any power of attorney or copy thereof issued on behalf of the Company to make, execute, seal and deliver for and on its behalf as surety any and all bonds, undertakings or other written obligations in the nature thereof; to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment. Such signatures and seal are hereby adopted by the Company as original signatures and seal and shall, with respect to any bond, undertaking or other written obligations in the nature thereof to which it is attached, be valid and binding upon the Company with the same force and effect as though manually affixed.

CERTIFICATE

I, the undersigned Assistant Secretary of The Ohio Casualty Insurance Company and West American Insurance Company, do hereby certify that the foregoing power of attorney, the referenced By-Laws of the Companies and the above Resolution of their Boards of Directors are true and correct copies and are in full force and effect on this date.

IN WITNESS WHEREOF, I have hereunto set my hand and the seals of the Companies this ____5th____ day of ____May____
2010

                                      *Mark E. Schmidt*

Assistant Secretary

**[Left margin, rotated text]** Not valid for mortgage, note, loan, letter of credit, bank deposit, currency rate, interest rate or residual value guarantees.

**[Right margin, rotated text]** To confirm the validity of this Power of Attorney call 1-513-867-3477 between 9:00 am and 4:30 pm EST on any business day.

| SOLICITATION, OFFER, AND AWARD *(Construction, Alteration, or Repair)* | 1. SOLICITATION NO. N40085-10-B-9436-0007 | 2. TYPE OF SOLICITATION [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP) | 3. DATE ISSUED 30-Apr-2010 | PAGE OF PAGES 1 OF 33 |
|---|---|---|---|---|

**IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.**

| 4. CONTRACT NO. N40085-10-C-9436 | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. P210V |
|---|---|---|

| 7. ISSUED BY          CODE  N40085 | 8. ADDRESS OFFER TO *(If Other Than Item 7)* CODE |
|---|---|
| NAVFAC MID ATLANTIC NORTHEAST IPT 9742 MARYLAND AVENUE BLDG Z-144 NORFOLK VA 23511 | **See Item 7** |
| TEL:                    FAX: | TEL:                    FAX: |

| 9. FOR INFORMATION CALL: | A. NAME LYNN LOVEJOY | B. TELEPHONE NO. *(Include area code)*  *(NO COLLECT CALLS)* (757) 341-1982 |
|---|---|---|

**SOLICITATION**

**NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".**

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS          *(Title, identifying no., date):*

NMRC N&MC Reserve Training Cetner Addition, Vehicle Maintenance Facility, and GUN SHED

SOLICITATION N40085-10-B-9436, DESIGN/BID/BUILD P-210V N&MC Reserve Training Center Addition, Vehicle Maintenance Facility, and Gun Shed at the NMCRC Lehigh Valley, Allentown, PA

BID OPENING - CURRENTLY UNKNOWN. This is a reprocurement of an earlier IFB and the Navy's right to conduct the reprocurement is currently being Protested at GAO. If the Navy prevails in the Protest, it will set a closing date of three weeks after it receives the decision, except in no case will the closing date be earlier than 6 April 2010. If the Navy does not prevail in the Protest, it will remove this IFB

ESTIMATED COST RANGE: $1,000,000 AND $5,000,000; NAICS CODE 236220 SIZE STANDARD $33,500,000.00; THIS PROCUREMENT IS UNRESTRICTED.

POC for this procurement is Lynn Lovejoy, telephone (757) 341-1982; lynn.lovejoy@navy.mil; facsimile (757) 341-2095

MAIL BIDS TO: NAVFAC MID-ATLANTIC, NORTHEAST IPT, 9742 MARYLAND AVE, NORFOLK, VA  23511-3095 ATTN: LYNN LOVEJOY. EXPRESS DELIVERY OF BIDS TO: NAVFAC MID-ATLANTIC, NORTHEAST IPT, 9324 VIRGINIA AVE, BLDG Z-144, 2ND FLOOR, ROOM 214, NORFOLK, VA  23511-3689 ATTN: LYNN LOVEJOY. HAND DELIVER BIDS TO THE EXPRESS DELIVERY ADDRESS, BUT GO TO THE FIRST FLOOR

SITE VISIT TO BE ESTABLISHED BY AMENDMENT.  INQUIRES ARE DUE NOT LATER THAN 25 MARCH 2010.

FEB - 9 2011

| 11. The Contractor shall begin performance within ___10___ calendar days and complete it within ___390___ calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [X] mandatory, [ ] negotiable. *(See _____)* |
|---|

| 12 A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)* [X] YES [ ] NO | 12B. CALENDAR DAYS 10 |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and ___3___ copies to perform the work required are due at the place specified in Item 8 by ___02:00 PM___ *(hour)* local time ___06 Apr 2010___ *(date).*   If this is a sealed bid solicitation, offers must be publicly opened at that time.   Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than ___60___ calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

NSN 7540-01-155-3212                    1442-101                    **STANDARD FORM 1442**  (REV. 4-85) Prescribed by GSA



**CSI²**

**Contracting Systems, Inc. II**

*Building Businesses' Future*

472 California Road • Quakertown, PA 18951

215 / 536-5750 • Fax: 215 / 536-1888 • email: csi2@voicenet.com

## SUBCONTRACT NO. 721.10-0012

| | | | |
|---|---|---|---|
| **SUBCONTRACTOR:** | Clipper Pipe and Service<br>PO Box 148<br>Crum Lynne, PA 19022 | **DATE:** | January 25, 2011 |
| **PROJECT:** | Reserve Training Center | **PROJECT NO:** | 721.10 |
| **TERMS:** | As detailed below | | |
| **LOCATED AT:** | Navy/Marine Corps<br>Reserve Training Center<br>Lehigh Valley, PA | **BILL TO:** | 472 California Rd.<br>Quakertown, PA 18951 |

### Specification Section:

### Subcontract Agreement

THIS SUBCONTRACT AGREEMENT ("Subcontract") made this 21st day of January 2010, by and between Contracting Systems, Inc. II, a Pennsylvania Corporation ("Contractor") and Clipper Pipe and Service, ("Subcontractor") for performance of Subcontractor's Work as hereinafter described: Supply all material, labor, and supervision for the completion of HVAC and all Mechanical work per drawings, any and all Addendums, specifications and exhibits A, B, C, D, E, F & G.

WHEREAS, the Contractor has entered into an agreement (the "General Contract") with the United States Navy (the "Owner") to provide general contracting services in connection with the Renovation and Addition of the Navy / Marine Corps Reserve Training Center (the "Project"); and

NOW, THEREFORE, in consideration of the covenants and agreements hereinafter set forth, and other good and valuable consideration, the Contractor and Subcontractor agree as follows:

**ARTICLE 1.** CONTRACT SUM. The parties agree that the total price (subject to additions and deductions authorized pursuant to paragraph 3.5 hereof) to be paid by the Contractor to the Subcontractor shall be Five hundred forty-five thousand dollars (**$545,000.00**) (the "Contract Sum"), which includes all applicable taxes and shall be payable as hereinafter set forth. Subcontractor agrees that the Contract Sum set forth herein includes adequate provision for cost escalation over the entire Contract Time up to the date of Final Completion. In no event shall the Contract Sum be subject to adjustment for escalation.

**ARTICLE 2.** CONTRACT DOCUMENTS. The Subcontractor shall perform the services provided for in this Subcontract in accordance with the Contract Documents. The Contract Documents for this Subcontract consist of the following: (a) this Subcontract and any exhibits attached hereto; (b) the General Contract between the Owner and Contractor and any conditions of the General Contract between Owner and Contractor (general, supplementary, and other conditions); (c) all drawings, plans, and specifications as set forth in exhibits hereof; (d) all modifications of the foregoing; and (e) approved Change Orders pursuant to Paragraph 3.5 of this Subcontract.

The foregoing are incorporated into this Subcontract and are as fully a part of this Subcontract as if attached hereto or repeated herein. The above documents have been and remain available to Subcontractor and copies

EXHIBIT "B"

will be furnished to Subcontractor upon request.  In the event of conflicts between this Subcontract and any other Contract Documents, this Subcontract will govern.  In any instance whereby the Contractor is required to incorporate language from the General Contract into the Subcontracts and/or Purchase Orders with its subcontractors and vendors, said subcontractors and vendors shall be likewise required.

It is the intent of this Subcontract that Subcontractor shall assume toward Contractor all of the obligation and responsibilities which Contractor, under the General Contract, assumes toward owner insofar as applicable to this Subcontract and the Subcontractor's work, provided that where any provision is inconsistent with any provision of this Subcontract, this Subcontract shall govern.  By execution of this Subcontract, Subcontractor acknowledges that it has familiarized itself with the Contract Documents, the Project, and the Site before entering into this Subcontract.  Subcontractor hereby waives and releases Contractor of and from any claims, losses, damages, or expenses suffered by Subcontractor as a result of (I) any defects, errors, or omissions in the Contract Documents or any concealed or unknown conditions at the Site at variance with the conditions indicated by the Contract Documents that would have been revealed by a reasonable inspection of the Site and the Contract Documents; or (II) any concealed or unknown conditions which do not differ materially from those ordinarily encountered and generally recognized as inherent in the work of the character provided for in this Subcontract.

**ARTICLE 3.**  SUBCONTRACTOR'S WORK.  Subcontractor's work shall mean the construction contemplated and intended by the Contract Documents and shall include all labor necessary to complete such construction, all materials, and equipment to be incorporated in such construction and all services, facilities, tools and equipment necessary to complete such construction regardless of whether such items have been specifically identified in the Contract Documents.  All of Subcontractor's work shall be completed in a first class workman like manner in accordance with the Contract Documents and shall be subject to the final approval by the architect for the project (the "Architect"), Owner and Contractor.

3.1     Quality of Work; Warranty.  Final acceptance of subcontractor's work shall be determined by the Contractor, Architect, and Owner.  Only first-class workmanship and materials will be acceptable. Subcontractor hereby warrants and represents to Owner, Architect, and Contractor that its work shall be free from faults and defects and in conformance with the contract documents, in conformance with all applicable codes and standards, and that all materials and equipment furnished shall be new unless otherwise specified.  Any of Subcontractor's work not conforming to the foregoing, including substitutions or changes not properly authorized, may be considered defective.  The foregoing warranty of Subcontractor shall be for a period of one (1) year from the date of final payment, which warranty is in addition to, and not in limitation of, any other warranty, guarantee, or remedy required or permitted by law or by the Contract Documents.

All defective work, materials, and/or equipment shall be replaced at Subcontractor's sole expense. Neither the foregoing or any provision of the contract documents, nor any special warranty time limit, shall be held to limiting Subcontractor's liability for errors, omissions or defects to a period less than that provided by the statute of limitation of the place of the Project.  Upon request of Contractor, Subcontractor will issue a separate written warranty in form acceptable to Contractor and Owner.

3.2     Equipment Warranties and Manuals.  The Subcontractor shall, prior to final payment, obtain and deliver to the Contractor all required written warranties for equipment furnished or installed by the Subcontractor.  In addition, the Subcontractor shall obtain, review, and deliver to the contractor all operating and maintenance manuals and other related documents required by the Contract Documents.

3.3     Shop Drawings.  The Subcontractor shall promptly submit Shop Drawings, Product Data and Samples ("Shop Drawings") required in order to perform Subcontractor's work efficiently, expeditiously and in a manner that will not cause delay in the progress of the work of Contractor or other subcontractor.  The Subcontractor shall not be relieved of responsibility for any deviation from the requirements of the Contract Documents by the approval of the Contractor or the Architect of Shop Drawings unless the Subcontractor has specifically informed the Contractor in writing of such deviation at the time of submittal and the Contractor or Architect has given written approval of the specific deviation.  The Subcontractor shall not be relieved from responsibility for errors or omissions in the Shop Drawings by the Contractor's approval or the Architect's approval thereof.

3.4     Coordination of Work.  Subcontractor shall provide a competent foreman to supervise subcontractor's work and he shall have authority to act for Subcontractor and must coordinate Subcontractor's work with others.  Except as otherwise agreed, if Subcontractor's work requires any layout or elevations, Subcontractor shall provide capable personnel to provide such layout and elevations.  Subcontractor shall cooperate with Contractor in scheduling and performing Subcontractor's work so as to avoid conflict or interference with the work of all other contractors, subcontractors, and suppliers.

If a problem arises, Subcontractor's foreman shall contact Contractor's Project Manager or Superintendent before making any corrections.  Subcontractor shall cooperate with Contractor and others whose work might interfere with Subcontractor's work, and shall participate in the preparation of coordinated drawings specifically noting and advising Contractor of any potential or existing interference.

3.5     Change Orders, Extras.  Without invalidating this Subcontract, Subcontractor may be ordered in writing by Contractor to make changes in Subcontractor's Work within the general scope of this Subcontract consisting of additions, deletions, or other revisions, and the Contract Sum and the time of completion shall be adjusted accordingly.  No such alterations shall be made in Subcontractor's work, nor shall any "extras" or change orders be accepted, except upon written order or authorization, signed by Contractor's Project Manager, or Contractor's other authorized representative at Contractor's main office; and the amount to be paid by Contractor and allowed to Subcontractor, by virtue of such alterations, "extras" or change orders, must be clearly stated in said order or authorization.  Contractor shall not be obligated to pay and Subcontractor shall not be entitled to receive any amount other than the contract Sum for any work done by Subcontractor unless such work is done pursuant to such written order or written authorization, and a copy of the signed order or authorization shall be submitted with any invoice pertaining thereto.  Without limiting the foregoing, Subcontractor agrees that under no circumstances shall Subcontractor make any alterations in Subcontractor's work or perform any work at the direction of the Owner.

3.6     Punch lists.  Upon receipt of the punch list, Subcontractor agrees to act on punch list items within two working days after receipt of written notice from Contractor.  These items shall then be completed or corrected within a reasonable time pending the availability of materials.  If Subcontractor fails to do so, the total cost incurred by the Contractor in connection therewith, including added supervision and overhead shall be deducted from payments otherwise due Subcontractor hereunder.

3.7     Cleaning.  Subcontractor will see that all debris, rubbish and waste resulting from its work is placed on a daily basis in the central waste container or transported to the location designated by Contractor's Project Manager or Superintendent.  Should Subcontractor breach this provision, it is agreed that Contractor may perform such cleaning on behalf of Subcontractor and may backcharge Subcontractor for Contractor's costs incurred in connection therewith by deducting such amount from payments otherwise due Subcontractor hereunder.

3.8     Temporary Service.  The Subcontractor shall furnish all temporary services and/or facilities necessary to perform its work, except as provided in Article 17.

3.9     Provision for Inspection.  The Subcontractor shall notify the Contractor when portions of the Subcontractor's work are ready for inspection.  The Subcontractor shall at all times furnish the Contractor and its representatives adequate facilities for inspecting at the Site or any place where materials under this Agreement may be in the course of preparation, process, manufacture, or treatment.

The Subcontractor shall furnish to the Contractor in such detail and as often as required, full reports of the progress of the Subcontractor's work irrespective of the location of such work.

3.10    Protection of the Work.  The Subcontractor shall take necessary precautions to properly protect Subcontractor's work and the work of others from damage caused by the Subcontractor's operations.  Should the Subcontractor cause damage to the work or property of the Owner, the Contractor or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor, or

3

the Contractor may so remedy and deduct the cost thereof from any amounts due or to become due to the Subcontractor. The Subcontractor shall have primary responsibility and liability for any damages or losses that may be incurred.

3.11    Substitutions. No substitutions shall be made in the Subcontractor's work unless permitted in the Contract Documents and only then upon the Subcontractor first receiving all approvals required under the Contract Documents for substitutions. The Subcontractor shall indemnify the Contractor for any increased costs incurred by the Contractor as a result of such substitutions for which the Subcontractor has not obtained approval thereof.

3.12    Use of Contractor's Equipment. The Subcontractor, its agents, employees, subcontractors, or suppliers shall not use the Contractor's equipment without the express written permission of the Contractor's designated representative.

If the Subcontractor or any of its agents, employees, suppliers, or lower tier subcontractors should utilize any machinery, equipment, tools, scaffolding, hoists, lifts, or similar items owned, leased, or under the control of the Contractor, the Subcontractor shall be liable to the Contractor as provided in Article 8 for any loss or damage (including personal injury or death) which may arise from such use, except where such loss or damage shall be found to have been due solely to the negligence of the Contractor's employees operating such equipment.

3.13    Privity. Until final completion of the Project, the Subcontractor agrees not to perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives, including the Architect in connection with the Project, unless otherwise permitted in writing by the Contractor.

3.14    Hazardous Materials. In the event that Subcontractor encounters on the Site material reasonably believed to be asbestos, polychlorinated byphenal ("PCB") or other impermissible hazardous material in any form which has not been rendered harmless, Subcontractor shall immediately stop work in the affected area and immediately notify the Contractor's Project Manager or Superintendent, which notice shall promptly be confirmed in writing. Work in the affected area shall be resumed when such materials has been removed or rendered harmless by the Owner.

Subcontractor shall not remove or dispose of any asbestos, PCB, or other impermissible hazardous material without the express written authorization of Owner and Contractor. Subcontractor hereby agrees that in the event that Owner and Contractor authorize such removal or disposal, Sub-contractor agrees to perform all such removal and disposal in accordance with all applicable laws and regulations. Subcontractor hereby agrees to indemnify Owner and Contractor from all claims, damages, costs, and expenses incurred as a result of Subcontractors unauthorized or improper removal or disposal of asbestos, PCB, or other impermissible hazardous material.

3.15    Subcontractor's Personnel. The Subcontractor shall maintain on the Project Site at all times a sufficient work force to carry out its obligations in an efficient and timely manner. The Subcontractor shall employ only competent, skilled, reliable, and honest workmen who will work in harmony and cooperation with other workmen on the Project Site.

The Subcontractor shall maintain the good order, discipline, and professional conduct of its employees and other persons under its direction and control or present at the Project Site in connection with the Subcontractor's work, and shall adopt and enforce regulations with respect to safety, fire prevention, smoking, the use of alcoholic beverages, illegal drugs, and other controlled substances and other activities that will or may constitute a danger to life, health or property. At the Contractor's direction, the Subcontractor shall promptly remove from the Project Site any employee or other person under its direction or control who, in the opinion of the Owner or the contractor, represents a threat to the safety or progress of the Project or persons on the Project site, or whose conduct is unprofessional or disruptive to the progress of the work.

The Subcontractor shall be responsible to the Contractor for acts or omissions of the Subcontractor's employees, sub-subcontractors, and their agents and employees, and other persons performing portions of the Work under the contract with or under the direction of the Subcontractor.

4

**ARTICLE 4.**     PAYMENTS TO SUBCONTRACTOR.

4.1     Schedule of Values and List of Subcontractors.  The Subcontractor shall provide a schedule of values and enumeration of Sub-subcontractors, including suppliers, to be used to perform the Subcontractor's work, each of which shall be satisfactory to the Contractor and Owner.  Each shall be provided not more than fifteen (15) days from the date of execution of this Subcontract.  The list of sub-subcontractors shall contain the name, address, telephone number, and contact person with respect to each Sub-subcontractor.  Subsequent changes to the list of sub-subcontractors may be made only upon written approval by the Contractor.

4.2     Progress Payments.  Subcontractor shall present to the Contractor invoices exactly five (5) working days prior to the date contractor is to submit requisitions to owner as specified in the agreement between Owner and Contractor (the "Requisition Date").  Each invoice must be marked with the Job Number on the front page of this Subcontract and shall be accompanied by releases from each sub-subcontractor and material supplier evidencing payment to each such sub-subcontractor and material supplier for all work done by such Subcontractor in connection with the Project up to and including work covered by previous such invoice of Subcontractor that included a payment for such sub-subcontractor and material supplier.  Invoices will not be processed without the reference Job Number.  Subcontractor's invoices shall cover all work installed and to be installed by Subcontractor up to and including the Requisition Date.  All invoices submitted by Subcontractor shall constitute a representation and warranty by Subcontractor that (I) the sums claimed thereon are for labor and/or materials that will physically be incorporated in the Project by the Requisition Date; (II) the labor and materials for which payment is requested conform to the Contract Documents and to all applicable laws, ordinances and regulations; (III) all such work was done in a good and workmanlike manner; and (IV) all materials were the type and quality required and free of defects.  Approval of any invoice shall be subject to verification by Contractor, Owner and Architect, and payment shall be within thirty (30) days of the date Contractor is to submit Requisitions to Owner subject to the condition precedent that Owner has paid Contractor such amounts.  Acceptance by Subcontractor of a progress payment shall constitute a release of Contractor by Subcontractor of and from any and all claims and causes of actions pertaining to Subcontractor's work and the project which subcontractor may have as of the date of the invoice(s) for such payment(s).

4.3     Retainage.  Contractor may retain out of any or all payments which Contractor may make to Subcontractor prior to final completion and acceptance of Subcontractor's work an amount equal to ten percent (10%) of the amount which has been approved for payment, until final completion and acceptance of the Subcontractor's work and payment of retainage by Owner and/or Bank.

4.4     Store Materials.  Unless otherwise provided in the Contract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontractor's work but delivered and suitably stored at the Site or at some other location agreed upon in writing.  Approval of payment application for such stored items on or off the Site shall be conditioned upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the Owner's title to such materials and equipment and otherwise to protect the Owner's and Contractor's interest therein, including transportation to the site and satisfaction of all other requirements of the Contract Documents pertaining to payment for such work.

4.5     Payments Withheld.  The Contractor may withhold funds from any progress payment to Sub-contractor to such extent as may be necessary for his protection in his opinion because of:  (1) defective work not remedied; (2) third party claims filed or reasonable evidence indicating probable filing of such claims; (3) failure of the Subcontractor to make payments properly to its subcontractor or for labor, materials, or equipment; (4) reasonable evidence that the Subcontract work cannot be completed for the unpaid balance of the Contract Sum; (5) damage to the Contractor, the Owner, or another contractor or subcontractor working at the project; (6) reasonable evidence that the subcontract work will not be completed within the contract time; or (7) failure to carry out the work in accordance with the subcontract or contractor's direction.  When the above grounds are removed, payment shall be made for amounts withheld because of them.

5

4.6     Final Payment.  Payment of the retained amount ("Final Payment") shall be made following inspection, approval, and acceptance of Subcontractor's work by Contractor, the Architect, and Owner, and subject to the following conditions precedent:  (a) upon receipt of the Owner's waive of all known claims related to the Subcontractor's work; and (b) within seven (7) days after receipt by the Contractor of final payment from the Owner for such Subcontractor's work.  Before issuance of the Final Payment, Subcontractor, if required, shall submit evidence satisfactory to Contractor that all payroll, bills for materials, equipment, and labor, and all known indebtedness connected with the Subcontractor's work have been satisfied.  At or before the time of such Final Payment, Subcontractor shall execute and deliver to Contractor (I) an instrument acknowledging the final amount due Subcontractor from Contractor pertaining to Subcontractor's work and/or in connection with the Project and (II) a Release of Liens relating to all work done under this Subcontract and/or in connection with the Project.  Subcontractor agrees that its acceptance of the Final Payment shall constitute Subcontractor's irrevocable waiver and release of Contractor of and from any and all claims, damages, and causes of action it may have under this Subcontract, the Contract Documents, at law or in equity to bring any suit, action, or claim against Contractor, its agents, servants, officer, directors, workmen and/or employees relating to this Subcontract, Subcontractor's work and/or the Project (including any claims against Contractor in Contractor's role as construction manager of the Project, if applicable.)  With its application for final payment, the Subcontractor shall submit a Final Release in form as reasonably required by Contractor.

4.7     Additional Conditions Regarding Payment.  Subcontractor shall make prompt payment to all persons furnishing labor, equipment, or material to Subcontractor in connection with the prosecution of Subcontractor's work.  No payment received by the Subcontractor shall be used to satisfy or secure any indebtedness other than one made by the Subcontractor to a person furnishing labor or materials for use in performing or incorporating into the subcontractor's work.  Contractor may, as a condition precedent to the making of any payment to Subcontractor, require satisfactory evidence of payment by Subcontractor of all indebtedness incurred for labor, equipment or material furnished to Subcontractor.  Further, in all cases of non-payment by Subcontractor of any sum or sums of money due laborers or other workmen, or suppliers or materialmen, for work performed or labor, material or equipment supplied in connection with Subcontractor's work, or if any demand, claim or action at law or in equity shall be instituted by any such persons for sums owing to them, Contractor may pay all wages, damages, claims, costs, and expenses to such persons following prior written notification to Subcontractor given at least three (3) days in advance of such payments Contractor may deduct the amounts paid (along with Contractor's counsel fees and expenses related to such claim from any sums due or to become due Subcontractor hereunder) and may also, from time to time, retain such reasonable sums as Contractor may deem necessary to secure  Contractor against further claims by any such persons.  In addition, Contractor reserves the right at any time to make any or all payments due Subcontractor for labor, material, or equipment supplied to Subcontractor by sub-subcontractors and materialmen jointly payable to Subcontractor and such sub-subcontractors or materialmen.

**ARTICLE 5.**  SCHEDULE.  Time is of the essence of this Subcontract.  Subcontractor shall perform the Subcontractor's work and the work of its subcontractors, so that the entire Project may be completed in accordance with the time period established in the Contract Documents and any schedule of work or directions which may be supplied by Contractor.  The Subcontractor acknowledges that changes may be made in any schedule of work and agrees to comply with such changes.

The Subcontractor shall cooperate with the Contractor in scheduling and performing his work to avoid conflict or interference within the work of others.  The Subcontractor shall provide the Contractor with any requested scheduling information with respect to the Subcontractor's work.

The Contractor shall have the right to determine the time, order, and priority in which the various portions of the Subcontractor's work shall be performed and all other matters relative to the timely performance of and completion of the Subcontractor's work.

If Contractor requires that Subcontractor hire or supply additional employees, or workmen, Subcontractor will provide the same within forty-eight (48) hours of such request.

6

5.1     Time of Commencement and Completion.  Subcontractor's work shall be commenced when directed by Contractor and, subject to authorized adjustments, shall be completed in accordance with the requirements of the Contract Documents.  No extension of time will be valid without Contractor's written consent.

5.2     Subcontractor's Delays. Whenever Subcontractor fails to deliver necessary men and/or materials to the Site on the day and at the time it is required to do so, or if Subcontractor or any person, partnership, or corporation furnishing materials or labor under Subcontractor's direction or control delays performance under the Contract Documents as scheduled, Contractor shall have the right to backcharge Subcontractor for all expenditures for direct, overhead, and supervision costs caused by Subcontractor's delay, and shall have the further right to terminate this Subcontract in accordance with Article 9 and Article 10 hereof.

5.3     Liquidated Damages.  If the Contract Documents provide for the assessment of liquidated or other damages for delay beyond the completion date set forth in the Contract Documents, and are so assessed or claimed, then the Contractor may assess same against the Subcontractor in proportion to the Subcontractor's share of the responsibility for such delay.  However, the amount of such assessment shall not exceed the amount assessed or claimed against the Contractor.

        Liquidated damages, as assessed against Contractor for Subcontractor's default may be but one item of the actual damages that may be incurred by Contractor and which the Contractor may assess against Subcontractor.  The proportionate assessment of liquidated damages as provided in this Article, shall not limit Contractor's right to collect from Subcontractor the additional actual damages by Contractor as a result of Subcontractor's default.

**ARTICLE 6.** COMPLIANCE WITH LAWS.  Subcontractor agrees to comply with all laws, rules, regulations, ordinances, codes and other requirements of any governmental authority now in force or hereafter adopted, wherever the same applies to Subcontractor's work.  Subcontractor shall comply with federal, state, and local laws, social security acts, unemployment compensation acts and workers compensation acts insofar as applicable to the performance of this Subcontract.  Subcontractor shall take all reasonable safety precautions with respect to Subcontractor's work and shall comply with all safety measures initiated by Contractor and with all applicable laws, ordinances, rules, regulations, and orders of any public authority for the safety of persons or property.  Subcontractor shall report within three days to contractor any injury to any person at the Premises.

6.1     Codes and Permits.  Subcontractor shall secure and pay for all permits and governmental fees, licenses and inspections necessary for the proper execution and completion of Subcontractor's work in compliance with applicable building codes.  Subcontractor's also agrees to give the proper governmental authorities all requisite notices relating to its work.

6.2     Federal Occupational Health and Safety Act.  It shall be Subcontractor's obligation to comply with all requirements of the Federal Occupational Health and Safety Act, 29 U.S.C.A. S651 et. Seq. (1970), as amended and Subcontractor hereby agrees to fully indemnify and save Contractor harmless from and against all liability and damage, including all costs and reasonable attorney's fees, incurred by Contractor as a result of the failure of Subcontractor or any of Subcontractor's employees or any other person, partnership, or corporation furnishing materials or labor to Subcontractor or under Subcontractor's direction or control to comply with any provision of said Act.

6.3     Wage Laws.  Subcontractor shall comply with any and all applicable provisions of federal, state or local wage laws including but not limited to the Davis-Bacon Act and applicable state wage laws, and all such provisions if applicable are hereby incorporated into this Subcontract and made part hereof as if set forth at length herein.

6.4     Should Subcontractor employ any lower tier subcontractors, Subcontractor shall ensure that said lower tier subcontractor shall comply with Article 6.3 of the Agreement.

6.5     If required, Subcontractor shall deliver to Contractor, in a form acceptable to Contractor, Certified Wage Rate Reports, for itself and any lower tier subcontractors it may employ.  Should Subcontractor or Subcontractor's lower tier Subcontractors experience in interim in the project schedule, between the

7

time said Subcontractor's or lower tier Subcontractor's work is commenced and completed, during which no labor is supplied to the project, certified payroll reports shall continue to be provided to the Contractor, indicating "No work performed".

**ARTICLE 7.** INSURANCE. Subcontractor shall provide contractor with satisfactory evidence of insurance coverage as required by the Contract Documents before proceeding with Subcontractor's work and shall maintain such coverage in full force and effect for the duration of performance of Subcontractor's work, such coverage to be in the same amounts as required of Contractor in the Contract Documents. Contractor shall have the right to obtain such insurance for Subcontractor if Subcontractor does not comply with his requirements, and the cost incurred by Contractor in connection therewith shall be deducted from payments otherwise due Subcontractor hereunder.

7.1     Additionally, the contracting parties hereby waive all rights they may have against one another or that the Subcontractor may have against the Owner for damages caused by fire or other perils covered by the insurance described in the Contract Documents.

**ARTICLE 8.** INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor shall indemnify, hold harmless, and defend Contractor, Owner, and Architect and all of their agents and employees from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees arising out of or resulting from the performance of Subcontractor's work or of other project work undertaken by Subcontractor provided that any such claim, damage, loss, or expense (a) is attributable to bodily injury, sickness, disease, or death, or patent infringement or to injury to or destruction of tangible property (other than the work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by it or anyone for whose acts it may be liable, or is caused by or arises out of the use of any products, material, or equipment furnished by Subcontractor, regardless of whether it is caused in part by a party indemnified hereunder. In any and all claims against Contractor, Owner, or Architect or any of their agents or employees, by any employee of Subcontractor, or anyone directly or indirectly employed by Subcontractor, or anyone for whose acts Subcontractor may be liable, the indemnification obligation under this shall not be limited in any way by any limitation on the amount or type of damages, compensation,  or benefits payable by or for Subcontractor under Workers' Compensation Acts, Disability Benefit Acts or other Employee Benefit Acts.

**ARTICLE 9.** SUBCONTRACTOR'S DEFAULTS. The occurrence of any of the following shall constitute an event of default by Subcontractor under this Subcontract:

(a)     the failure of Subcontractor to provide the additional labor requested by Contractor within forty-eight (48) hours of such request; or

(b)     the failure of Subcontractor at any time, in Contractor's discretion, to supply a sufficient quantity of materials of proper quality; or

(c)     the failure of Subcontractor to prosecute Subcontractor's work with promptness and diligence and in a good and workmanlike manner; or

(d)     the failure of Subcontractor to perform or fulfill any of its obligations under this Subcontract; or

(e)     should any workmen performing work covered by this Subcontract engage in a strike or other work stoppage or cease work due to picketing or other such activity; or

(f)     the failure of Subcontractor with or without cause to prosecute Subcontractor's work to the satisfaction of Contractor; or the failure of the Subcontractor to promptly comply with a directive of the Contractor to remove any person from the Project Site pursuant to Section 3.16 hereof;

(g)     should Subcontractor at any time become insolvent; or

(h)     the failure of Subcontractor to comply with the Contract Documents; or

(i)     should Subcontractor cause by any action the stoppage of Subcontractor's work or the work of others performing work upon the Project; or

(j)     should any person, partnership, corporation, or firm supplying labor or materials to Subcontractor file a mechanic's lien claim (as defined in the Pennsylvania Mechanic's Lien Law); or

(k)     should Subcontractor file a mechanic's lien claim, as provided below in Article 14; or

(l)     the failure of Subcontractor to make prompt payment for materials or labor; or

(m)    should Subcontractor make an assignment for the benefit of creditors, or a petition under any bankruptcy insolvency or similar laws is filed by or against Subcontractor.

8

**ARTICLE 10.**   CONTRACTOR'S REMEDIES ON DEFAULT

10.1   Upon the happening of any of the foregoing events of default by Subcontractor, Contractor shall, without prejudice to any other right or remedy and after giving Subcontractor at least two business days' written notice, have the right to exercise any one or more of the following remedies:

(a)   supply such number of workers and quantity of materials, equipment, and other facilities as Contractor deems advisable for the completion of Subcontractor's work, or any part thereof and charge the cost thereof to Subcontractor, who shall be liable for the payment of same; or

(b)   contract with one or more additional contractors to perform such part of Subcontractor's work as Contractor deems advisable for the completion of Subcontractor's work or any part thereof and charge the cost thereof to Subcontractor who shall be liable for payment of same; or

(c)   by written notice, effective upon receipt by Subcontractor, terminate this Subcontract and enter into and take possession of the work, materials, tools, appliances, and equipment of Subcontractor needed to complete Subcontractor's work or any part thereof and prosecute the same to completion by contract or otherwise, and make such payments as Contractor deems necessary for the discharge, in whole or in part, of any claims, liens, or claims for liens, of any person on account of the work furnished under this Subcontract, and Subcontractor agrees that the expense of such notice and taking of possession, and of the completion of Subcontractor's work, and the amount paid on account of claims, liens, or claims for liens, and the expense thereof, shall be charged to Subcontractor, who shall be liable for same.

10.2   If, after Contractor exercises any or all of the foregoing remedies, the unpaid balance of the Contract sum exceeds the cost of finishing Subcontractor's work, or any part thereof, including compensation of Contractor for additional services and overhead and a profit of ten percent (10%) such excess shall be paid to Subcontractor. If the total of all such costs and expenses is more than the amounts due Subcontractor, then Subcontractor shall be liable to Contractor for the excess, and Contractor may hold, sell, or otherwise realize upon any of the Subcontractor's material, machinery, tools, or other equipment upon the Premises on account of such excess in case Subcontractor shall fail or refuse to pay the same.

10.3   Contractor's exercise of any remedy, whether provided herein or otherwise, is without prejudice to any other remedy available to Contractor hereunder, or by law, statute or in equity, it being understood that all such remedies are reserved and may be pursued individually or cumulatively and as often as is necessary.

10.4   If the Contractor wrongfully exercises any option under this Article, or wrongfully terminates Subcontractor's performance in whole or in part under any other provision of this Contract, the Contractor shall be liable to the Subcontractor solely to the extend provided in Article 11 hereof.

10.5   Subcontractor collaterally assigns, transfers, and conveys unto Contractor, its successors and assigns, all the rights, interest, and privileges of Subcontractor in and to each and every contract which subcontractor has entered into or shall hereafter enter into with respect to the Sub-contractor's work, including subcontracts for labor, materials, services, and equipment. This assignment is made to secure Subcontractor's obligation of Subcontractor in connection with any of such subcontracts unless and until Contractor, following a default by Subcontractor hereunder, expressly assumes in writing any such contract

The Subcontractor agrees to insert the following language in all of it contracts with parties furnishing labor, materials, services or equipment:

*Contractor shall have no liability to the Sub-subcontractor either under this contract or the assignment by Subcontractor of this contract for any act or omission occurring prior to such time as Contractor elects to assume the then future obligations of Subcontractor under this contract. Furthermore, Sub-subcontractor agrees, upon the request of Contractor to complete the work described in this contract in strict accordance with the terms of this contract, for the benefit of Contractor.*

9

**ARTICLE 11.** TERMINATION FOR CONVENIENCE OF CONTRACTOR. Notwithstanding any provisions to the contrary contained in the contract documents, Contractor shall have the right, at any time during this Subcontract, to terminate this Subcontract without cause (i.e.: for the convenience of Contractor) and upon giving Subcontractor at least five days written notice. In such event, in lieu of any other payments due here-under for the period after the requisition date immediately preceding the notice, Contractor shall be liable to reimburse Subcontractor for Subcontractor's actual direct costs and expenses for labor, material, and equip-ment after such requisition date, plus ten percent (10%) thereof, as compensation for Subcontractor's expenses of administration, overhead and profit from and after the requisition date immediately preceding the notice.

**ARTICLE 12.**   SUSPENSION OR TERMINATION BY OWNER

12.1    Suspension by Owner. Should the Owner suspend the General Contract or any part of the General Contract which includes the Subcontractor's work, the Contractor shall so notify the Subcontractor in writing and upon receipt of said notice the Subcontractor shall immediately suspend the Subcontractor's work.

In the event of such Owner suspension, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the Contract Documents. The Contractor's obligations and the Subcontractor's rights with respect thereto shall be as set forth in Article 13.1.

12.2    Termination by Owner. Should the Owner terminate the prime contract or any part of the prime contract which includes the Subcontractor's work, the Contractor shall so notify the Subcontractor in writing and upon receipt of said notice, agreement shall also be terminated and the Subcontractor shall immediately stop the Subcontractor's work.

In the event of such Owner termination, the Contractor's liability to the Subcontractor is limited to the extent of the Contractor's recovery on the Subcontractor's behalf under the  Contract Documents. The Contractor's obligations and the Subcontractor's rights with respect thereto shall be as set forth in Article 13.1.

**ARTICLE 13.**   CLAIMS

13.1    Claims Relating to Owner. The Subcontractor agrees to make all claims for which the Owner is or may be liable in the manner provided in the contract documents for like claims by the Contractor upon the Owner.

Notice of any such claim shall be given by the Subcontractor to the Contractor within five (5) days of the event giving rise to such claim, and, in any event, within such time as will allow Contractor reasonable time to present notice to owner or its representative in accordance with the requirements of the contract documents. Otherwise, such claims shall be deemed waived.

The Contractor agrees to permit the Subcontractor to prosecute said claim, in the name of the Contractor, for the use and benefit of the Subcontractor (or at Contractor's option to present such claim itself on behalf of Subcontractor) in the manner provided in the contract documents for the prosecution of like claims by the Contractor against the Owner.

The Subcontractor shall have no greater right or claim against the Contractor than the Contractor has against the Owner; and Contractor shall not be liable to Subcontractor in excess of any sum received from owner on behalf of Subcontractor. The Subcontractor shall cooperate with the Contractor in the presentation of such claims against the Owner. As a condition precedent to Subcontractor's proceeding against the Owner in the Contractor's name, if requested by Contractor, Subcontractor shall provide adequate security so as to protect Contractor against counterclaims and causes of action by the Owner arising out of or relating to Subcontractor's work. Subcontractor, in any event, agrees to indemnify and hold harmless Contractor and its surety against any and all liability, loss and expense, including attorney's fees, with respect to such counterclaims and causes of action. Upon Contractor's request, Subcontractor shall also provide evidence, satisfactory to Contractor, that if the Owner asserts such counterclaims or causes of action, the Subcontractor can pay same. If the Contractor permits the

10

Subcontractor to proceed without total security being provided to Contractor's satisfaction, then the Contractor has the right to reject the counsel selected by the Subcontractor, and exercise of this right will not subject the Contractor to any liability.

A condition of Contractor obligation to permit the presentation of any claim by Subcontractor in the name of the Contractor shall be Subcontractor's provision of all necessary certifications and verifications required for the presentation of such claim under the terms of the contract documents or otherwise by law. In addition, Subcontractor shall indemnify Contractor against any and all liability, loss or expense including attorney's fees, arising out of the provision of defective or incorrect certification or information by Subcontractor in connection with any such claim.

Contractor does not warrant that the terms of the contract documents or applicable law necessarily permit the assertion of pass through claims on behalf of Subcontractor.

The Subcontractor's failure to pursue in the manner provided by Article 13.1 any claim for which the Owner is or may be liable, including any claim for which Contractor asserts the Owner may be liable, or the pursuit of such claim or any related claim against Contractor. In no event shall any action lie against Contractor or its surety in respect to any such claim or any related claim until all remedies under this Article 13.1 have been exhausted.

13.2   Claims relating to Contractor. The Subcontractor shall give the Contractor written notice of all claims not included in Article 13.1 within five (5) days of the beginning of the event for which claim is made; otherwise, such claims shall be deemed waived. Further, if the Subcontractor believes that any direction of contractor relative to performance of the work gives rise to any claim, the Subcontractor shall give Contractor prompt written notice of such claim prior to commencement of the affected work and in any event, within five (5) days of the receipt of such direction. Otherwise, such claim shall be waived.

Promptly upon request of Contractor, but in no event later than ten (10) days after the event or direction giving rise to any claim, Subcontractor shall provide Contractor with full documentation of the basis for the claim and for the increased costs or time for which claim is made. Failure to comply with this condition shall result in waiver of the claim.

**ARTICLE 14.**   LIENS   Subcontractor hereby covenants and agrees that neither Subcontractor nor any other person, partnership, or corporation furnishing labor or materials to or for the benefit of Subcontractor shall file a lien, commonly called a mechanic's or materialman's lien, or charge against the real estate of or leased to the Owner, or against monies due or coming due from the Owner to the Contractor, including a notice of intention to file, a stop notice, or a notice of lien for work done or materials furnished to the Project.

The Subcontractor shall not serve or file any notice or document, the serving or filing of which is a condition precedent to the Subcontractor's right to file a lien. The Subcontractor agrees to insert the following language in all of its contracts with parties furnishing labor, material, services, or equipment to the Subcontractor for the project:

Sub-subcontractor agrees that no mechanic's lien or other claim or claims in the nature of a lien or charge against the real estate of or leased to the Owner or against monies due to or coming due from Owner to the Contractor, including a notice of intention, stop notice, or notice of lien shall be filed or maintained by Sub-subcontractor for materials, labor, services, or equipment in connection with the job and that any such right to file such lien, claim, or notice of intention, stop notice, or notice of lien is expressly waived.

This stipulation and agreement waiving the right of lien shall be an independent covenant and shall also operate and be effective with respect to work done and materials furnished under any supplemental contract, arrangement, or change order for extra work or modifications to the Subcontractor's work.

In the event any mechanic's lien or claim or notice of intention, stop notice, or notice of lien is filed by the Subcontractor or by any Subcontractor or by any Sub-subcontractor, laborer, materialman, the Subcontractor for itself and for any such Sub-subcontractor, laborer or materialman hereby irrevocably waives any rights to a jury trial in any action to strike or discharge the lien. If the Subcontractor or any Sub-subcontractor, laborer, or

materialman files a mechanic's lien, notice of intention, stop notice or notice of lien notwithstanding this waiver, Owner of the premises or the Owner's representative shall have the right to discharge the lien by appropriate legal proceedings and to retain out of any payment then due or thereafter to become due to the Subcontractor, an amount sufficient to completely reimburse and indemnify Owner against expenses and losses resulting from such lien.  Such expenses and losses shall include any attorney's fees, surety bond premiums and other costs incurred in attempting to discharge or remove such lien, and any damages or other losses resulting from such lien, all of which the undersigned agrees to pay.  If any payment then due to the Subcontractor by Contractor is not sufficient to reimburse and indemnify Owner and Contractor with respect to all covenants of this Agreement, Subcontractor shall be liable to Contractor for the amount necessary to reimburse and indemnify Owner and Contractor.

**ARTICLE 15.**  BINDING EFFECT AND ASSIGNMENT.  The Contractor and Subcontractor each binds itself, its partners, successors, assigns, and legal representative to the other party to the Agreement and to the partners, successors, assigns, and legal representatives of such other party with respect to all covenants of this Agreement.  The Subcontractor shall not assign, sublet, or transfer his interest in the Agreement without the written consent of the Contractor.

15.1    Subcontractor hereby agrees that Subcontractor shall continue to perform under this Subcontract Agreement in the event the General Contract is terminated between the Contractor and the Owner and the Owner shall take an assignment of said subcontract and request such Subcontractor to continue such performance.

**ARTICLE 16.**  MISCELLANEOUS

16.1    Entire Agreement.  This Subcontract (including all contract documents referred to and incorporated) contains the entire agreement between the parties and there are not other terms, covenants, obligation, or representations, oral or written, of any kind whatsoever.  No other agreement of Subcontractor (including any labor agreement) shall in any way relieve Subcontractor of obligations under this Subcontract.  Any modification, addition or alteration of this Subcontract must be in writing and signed by the parties.

16.2    Captions.  The captions preceding the test of the paragraphs or subparagraphs of this Subcontract are inserted only for convenience of reference and shall not constitute a part of this Subcontract, nor shall they in any way affect its meaning, construction, or effect.

16.3    Notices.  All notices given under any of the provisions of this Subcontract shall be in writing and shall be deemed to have been duly given if sent by nationally recognized overnight delivery service customarily obtaining proof of delivery, addressed to the parties at the addresses set forth at the beginning of this Subcontract, or to such other address as the parties may designate in writing as set forth above.  Notices shall be deemed to have been delivered when sent.

16.4    Number.  For purposes of this Subcontract, the singular shall be deemed to include the plural, and the plural the singular, as the context may require.

16.5    Severability.  The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision.

16.6    Governing Law.  This Subcontract shall be construed under and governed by the law of the place of Project.

**ARTICLE 17.**   OTHER PROVISIONS

17.1   Temporary Services.  Except as expressly provided herein, all temporary services or facilities pertinent to Subcontractor's performance of its work are to be furnished by the Subcontractor.

17.2   Continuation of Work.  The Subcontractor shall not stop the Subcontractor's work during the pendency of a bona fide dispute between the Contractor and Subcontractor, including during any arbitration or other legal proceedings, provided that any sums not in dispute shall be paid by the Contractor to Subcontractor in accordance with this Subcontract.

**IN WITNESS WHEREOF,** the parties hereto, intending to be legally bound hereby, have executed this Subcontract on the date set forth at the beginning of this Subcontract.

NET AMOUNT:      $545,000.00

---

Contracted by:
**Contracting Systems, Inc. II**

Signed:_____

By:        John W. Clarke, President

Date:      _____

Contracted by:
**Clipper Pipe and Service**

Signed:_____

By:_____

Date:_____.



**CSI²**   Contracting Systems, Inc. II
*Building Businesses' Future*

472 California Road • Quakertown, PA 18951
215/536-5750 • Fax: 215/536-1888 • Email: csi2@voicenet.com

7/12/10

## EXHIBIT A
## N&MC Reserve Training Center
## Drawing List

**Architect/Engineer: Fay, Spofford & Thorndike**

| Drawing | Description | Date | Revision |
|---------|-------------|------|----------|
| G-001 | Title Sheet | 8/3/09 | |
| G-002 | Index of Drawings | 8/3/09 | |
| G-101 | General Plan | 8/3/09 | |
| | | | |
| V-001 | Notes, References, Legend & Abbreviations | 8/3/09 | |
| V-101 | Topographic Survey – Part 1 | 8/3/09 | |
| V-102 | Topographic Survey – Part 2 | 8/3/09 | |
| V-103 | Topographic Survey – Part 3 | 8/3/09 | |
| V-104 | Topographic Survey – Part 4 | 8/3/09 | |
| V-105 | Topographic Survey – Part 5 | 8/3/09 | |
| | | | |
| B-001 | General Notes & Details | 8/3/09 | |
| B-101 | Exploration Location Plan | 8/3/09 | |
| B-102 | Reserve Center Addition Ground Improvement Plan | 8/3/09 | |
| B-103 | Vehicle Maintenance Facility/Gun Shed Ground Improvement Plan | 8/3/09 | |
| B-104 | Sink Hole Repair Ground Improvement Plan | 8/3/09 | |
| | | | |
| C-001 | General Notes & Legend | 8/3/09 | |
| CD101 | Demolition Plan | 8/3/09 | 9/3/09 |
| C-101 | Soil Erosion & Sediment Control Plan | 8/3/09 | |
| C-102 | Site Plan | 8/3/09 | 9/3/09 |
| C-103 | Layout / Geometry Plan | 8/3/09 | 9/3/09 |
| C-104 | Grading & Drainage Plan | 8/3/09 | |
| C-105 | Utilities Plan | 8/3/09 | 9/21/09 |
| C-106 | Pavement Marking & Signage Plan | 8/3/09 | |
| C-201 | Drainage Profiles Plan | 8/3/09 | |
| C-202 | Sewer Profile Plan | 8/3/09 | |
| C-301 | Cross Sections – Part 1 | 8/3/09 | |
| C-302 | Cross Sections – Part 2 | 8/3/09 | |
| C-303 | Cross Sections – Part 3 | 8/3/09 | |
| C-501 | Soil Erosion & Sediment Control Details | 8/3/09 | |
| C-502 | Details – Part 1 | 8/3/09 | 9/3/09 |
| C-503 | Details – Part 2 | 8/3/09 | |
| C-504 | Details – Part 3 | 8/3/09 | |

2

| S-001 | General Notes & Abbreviations | 8/3/09 | |
| S-101A | Reserve Center Addition Foundation Plan | 8/3/09 | |
| S-102A | Reserve Center Addition Roof Framing Plan | 8/3/09 | |
| S-101B | Vehicle Maintenance Facility/Gun Shed Foundation Plan | 8/3/09 | |
| S-102B | Vehicle Maintenance Facility/Gun Shed Roof Framing Plan | 8/3/09 | |
| S-201 | Framing Elevations | 8/3/09 | |
| S-401A | Reserve Center Addition Roof Part Plans & Sections | 8/3/09 | |
| S-501 | Details – Part 1 | 8/3/09 | |
| S-502 | Details – Part 2 | 8/3/09 | |
| S-503 | Details – Part 3 | 8/3/09 | |

| A-001 | Abbreviations, Legends & Egress Plans | 8/3/09 | 9/21/09 |
| AD101A | Reserve Center Demolition Plan | 8/3/09 | |
| A-101A | Reserve Center Addition Floor Plan | 8/3/09 | 9/21/09 |
| A-102A | Reserve Center Addition Reflected Ceiling Plan | 8/3/09 | |
| A-103A | Reserve Center Addition Roof Plan | 8/3/09 | |
| A-104A | Reserve Center Addition Furniture Plan | 8/3/09 | |
| A-105A | Reserve Center Addition Floor Finish & Accent Paint Locations Plan | 8/3/09 | |
| A-101B | Vehicle Maintenance Facility/Gun Shed Ground Floor & Mezzanine Level Plan | 8/3/09 | |
| A-102B | Vehicle Maintenance Facility/Gun Shed Reflected Ceiling Plan | 8/3/09 | |
| A-103B | Vehicle Maintenance Facility/Gun Shed Roof Plan | 8/3/09 | |
| A-104B | Vehicle Maintenance Facility/Gun Shed Furniture Plan | 8/3/09 | |
| A-201A | Reserve Center Addition Exterior Elevations | 8/3/09 | |
| A-201B | Vehicle Maintenance Facility/Gun Shed Exterior Elevations | 8/3/09 | |
| A-301A | Reserve Center Addition Building Sections | 8/3/09 | |
| A-302A | Reserve Center Addition Wall Sections | 8/3/09 | |
| A-303A | Reserve Center Addition Wall Sections | 8/3/09 | |
| A-301B | Vehicle Maintenance Facility/Gun Shed Building Sections | 8/3/09 | |
| A-302B | Vehicle Maintenance Facility/Gun Shed Wall Sections | 8/3/09 | |
| A-303B | Vehicle Maintenance Facility/Gun Shed Wall Sections | 8/3/09 | |
| A-401A | Reserve Center Addition Enlarged W. Toilet RM Plan, Interior Elevations & Details | 8/3/09 | |
| A-402A | Reserve Center Addition Enlarged M. Toilet/Locker RM Plan & Interior Elevations | 8/3/09 | |
| A-403A | Reserve Center Addition Enlarged Quarterdeck Plan & Interior Elevations | 8/3/09 | |
| A-404A | Reserve Center Addition Entry Vestibule Enlarged Plan, Interior Elevation & Detail | 8/3/09 | |
| A-405A | Reserve Center Addition Interior Elevations | 8/3/09 | |
| A-406A | Reserve Center Addition Interior Elevations | 8/3/09 | |
| A-401B | Vehicle Maintenance Facility/Gun Shed Enlarged Plans & Details | 8/3/09 | |

3

| A-402B | Vehicle Maintenance Facility/Gun Shed Interior Elevations | 8/3/09 | |
|--------|----------|--------|--------|
| A-403B | Vehicle Maintenance Facility/Gun Shed Interior Elevations & Details | 8/3/09 | |
| A-501A | Reserve Center Addition Interior Details | 8/3/09 | |
| A-502A | Reserve Center Addition Interior Details – Part 1 | 8/3/09 | |
| A-503A | Reserve Center Addition Interior Details – Part 2 | 8/3/09 | |
| A-504A | Reserve Center Addition Interior Details | 8/3/09 | |
| A-501B | Vehicle Maintenance Facility/Gun Shed Metal Panel & Interior Details | 8/3/09 | |
| A-502B | Vehicle Maintenance Facility/Gun Shed Exterior Details | 8/3/09 | |
| A-503B | Vehicle Maintenance Facility/Gun Shed Exterior Details – Part 2 | 8/3/09 | |
| A-601 | Partition Details | 8/3/09 | 9/21/09 |
| A-602A | Reserve Center Addition Door Schedule & Details | 8/3/09 | |
| A-603A | Reserve Center Addition Door & Frame Details | 8/3/09 | |
| A604A | Reserve Center Addition Window Schedule & Details | 8/3/09 | |
| A-605A | Reserve Center Addition Exterior Louver Schedule & Details | 8/3/09 | |
| A-606A | Reserve Center Addition Finish Schedule, Finish Legend & Details | 8/3/09 | |
| A-604A | Reserve Center Addition Interior Signage, Schedule, Legend & Details | 8/3/09 | |
| A-608A | Reserve Center Addition Exterior Signage Details | 8/3/09 | |
| A-609A | Reserve Center Addition Furniture Legend, Furniture Schedule, Equipment Legend | 8/3/09 | |
| A-602B | Vehicle Maintenance Facility/Gun Shed Door Schedule & Details | 8/3/09 | |
| A-603B | Vehicle Maintenance Facility/Gun Shed Window Schedule & Details | 8/3/09 | |
| A-604B | Vehicle Maintenance Facility/Gun Shed Finish Schedule, Finish Legend & Details | 8/3/09 | |
| A-605B | Vehicle Maintenance Facility/Gun Shed Signage Schedule, Legend & Details | 8/3/09 | |

| F-001 | Sprinkler Notes & Legend | 8/3/09 | |
|-------|----------|--------|--------|
| F-101A | Reserve Center Addition Sprinkler Layout | 8/3/09 | |
| F-102A | Reserve Center Addition Fire Extinguisher Layout | 8/3/09 | |
| F-101B | Vehicle Maintenance Facility/Gun Shed Sprinkler Layout | 8/3/09 | |
| F-102B | Vehicle Maintenance Facility/Gun Shed Fire Extinguisher Layout | 8/3/09 | |
| F-401 | Water Based Suppression System Details | 8/3/09 | |
| FA001 | Fire Alarm Notes, Legend & Riser Diagram | 8/3/09 | 9/21/09 |
| FA101A | Reserve Center Addition Fire Alarm Layout | 8/3/09 | 9/21/09 |
| FA101B | Vehicle Maintenance Facility/Gun Shed Fire Alarm Layout | 8/3/09 | 9/21/09 |

4

| P-001 | Notes, Abbreviations & Legend | 8/3/09 | |
|---|---|---|---|
| P-101A | Reserve Center Addition Floor Plan | 8/3/09 | |
| P-101B | Vehicle Maintenance Facility/Gun Shed Floor Plan | 8/3/09 | |
| P-401A | Reserve Center Addition Parts Plan | 8/3/09 | |
| P-401B | Vehicle Maintenance Facility/Gun Shed Parts Plan | 8/3/09 | |
| P-501 | Details – Part 1 | 8/3/09 | |
| P-502 | Details – Part 2 | 8/3/09 | |
| P-601 | Schedules | 8/3/09 | |
| P-602 | Riser Diagram | 8/3/09 | |

| M-001 | Notes, Abbreviations & Legend | 8/3/09 | |
|---|---|---|---|
| M-101A | Reserve Center Addition Heating Floor Plan | 8/3/09 | |
| M-102A | Reserve Center Addition Ventilation Floor Plan | 8/3/09 | |
| M-103A | Reserve Center Addition Roof Plan | 8/3/09 | |
| M-101B | Vehicle Maintenance Facility/Gun Shed Floor Plan | 8/3/09 | |
| M-102B | Vehicle Maintenance Facility/Gun Shed Mezzanine Plan | 8/3/09 | |
| M-103B | Vehicle Maintenance Facility/Gun Shed Roof Plan | 8/3/09 | |
| M-401A | Reserve Center Addition Part Plan | 8/3/09 | |
| M-501 | Details – Part 1 | 8/3/09 | |
| M-502 | Details – Part 2 | 8/3/09 | |
| M-503 | Details – Part 3 | 8/3/09 | |
| M-504 | Controls | 8/3/09 | |
| M-505 | Sequence of Operation | 8/3/09 | |
| M-601 | Schedules – Part 1 | 8/3/09 | |
| M-602 | Schedules – Part 2 | 8/3/09 | |
| M-603 | Schedules – Part 3 | 8/3/09 | |

| E-001 | Legend, Abbreviations & Notes | 8/3/09 | |
|---|---|---|---|
| E-101 | Site Plan | 8/3/09 | 9/3/09 |
| E-102A | Reserve Center Addition Power Plan | 8/3/09 | |
| E-103A | Reserve Center Addition Lighting Plan | 8/3/09 | |
| E-104A | Reserve Center Addition Roof Plan | 8/3/09 | |
| E-102B | Vehicle Maintenance Facility/Gun Shed Power Plan | 8/3/09 | |
| E-103B | Vehicle Maintenance Facility/Gun Shed Lighting Plan | 8/3/09 | |
| E-104A | Reserve Center Addition Part Plans | 8/3/09 | |
| E-501 | Details – Part 1 | 8/3/09 | |
| E-502 | Details – Part 2 | 8/3/09 | |
| E-503 | Lighting Fixture Details – Part 1 | 8/3/09 | |
| E-504 | Lighting Fixture Details – Part 2 | 8/3/09 | |
| E-505 | Lighting Fixture Details – Part 3 | 8/3/09 | |
| E-601 | Power Riser Diagram | 8/3/09 | |
| E-602 | Lighting Control Diagrams – Part 1 | 8/3/09 | |
| E-603 | Lighting Control Diagrams – Part 2 | 8/3/09 | |
| E-604 | Lighting Fixture Schedule | 8/3/09 | |
| E-605 | Panelboard Schedules – Part 1 | 8/3/09 | |
| E-606 | Panelboard Schedules – Part 2 | 8/3/09 | |

5

| E-607 | Panelboard Schedules – Part 3 | 8/3/09 | |
|-------|------------------------------|--------|--|
| E-608 | Panelboard Schedules – Part 4 | 8/3/09 | |
| E-609 | Panelboard Schedules – Part 5 | 8/3/09 | |
| E-610 | Miscellaneous Riser Diagrams | 8/3/09 | |

EXHIBIT "B" – SCOPE OF WORK
NAVY / MARINE CORPS RESERVE TRAINING CENTER
JOB NO. 721.10

**SUBCONTRACTOR:**    Clipper Pipe and Service

**SUBCONTRACT NO:**    721.10-0012

Supply all material, labor, supervision and necessary equipment for the completion of HVAC and all Mechanical work per drawings and specifications and any and all addenda up to and including this date. Work shall include, but not be limited to:

1. Mobilizations/Demobilizations;
2. Contract Requirements per Specifications (i.e. submittals and submittal procedures, closeout documents, use of National Account Vendors, etc...);
3. All labor, equipment (i.e., lifts, scaffolds, etc.), tools, <u>taxes</u>, and materials to complete the **HVAC and all Mechanical Work** as per the plans and specifications
4. Compile all AHA (Action Hazard Analysis) within 7 days of receipt of your contract
5. Work with the Owner to prepare record drawings as per the specification;
6. Furnish all applicable closeout documents to include manuals;
7. Coordinate and obtain all required inspections
8. Comply with Specification Divisions 00 and 01, the entire specification package is herby incorporated in this letter of intent
9. Visit job site to review and verify existing site conditions.
10. Coordinate and obtain all required inspections;
11. Placing all equipment in service;
12. Tests, Inspections and Warranties as required;
13. Coordinate with other trades as required;
14. Layout – Coordinate with Steel Contractor on unit layout to include providing curb cut sheets;
15. Unloading and placing of all mechanical equipment, to include rigging where required;
16. Furnish crane as required (several different days if needed per your scheduling of units);
17. Furnish all required scaffolding, lifts, or any other equipment to perform your work;
18. Furnish and install al HVAC units and accessories as specified;
19. Furnish and install all thermostats as shown or specified;
20. Furnish and install ductless split systems, complete, per plans and specifications;
21. Furnish and install the electrical box and disconnect on all roof mounted equipment;
22. Furnish and install roof curbs (wood blocking by others);
23. Furnish and install temporary controls as required by Owner;
24. Furnish and install condensate drains for units per plans and specifications;
25. Furnish and install all refrigeration piping as shown or specified;
26. Furnish and install Air Curtains where shown on the drawings or specified;
27. Furnish and install electric unit heater where shown on the drawings or specified;
28. Furnish and install duct detectors in all units as per drawings and specifications and local code;
29. Furnish and install Fire Dampers;
30. Furnish and install Bathroom Fans and Duct Work for a complete system;

31. Furnish and install all duct work as required and specified (spiral duct where specified and required);
32. Insulate all duck work where shown on the drawings or as specified;
33. Furnish and install all grilles, registers and diffusers;
34. Provide testing and balancing by independent contractor with Certified Balance Reports;
35. Furnish and install all exhaust fans as per plans and specifications.
36. Furnish and install all mechanical equipment for the VMF as per plans and specifications
37. Furnish and install all equipment as outlined on all "M" drawings as per plans and specifications.
38. Furnish and Install all Compressed Air lines for all equipment under this scope
39. Furnish and install a complete Compressed Air system as shown on drawing P502 along with all associated controls, gauges, and monitoring systems as required.
40. Cleaning from your work shall be completed on a daily basis and placed in a container provided by CSI
41. Include all freight/ delivery charges to project site in proposal.
42. All HVAC work  by the General Contractor is part of this scope
43. All Mechanical work by the General Contractor is part of this scope
44. All Piping associated with the HVAC and Mechanical work by the general contractor is part of this scope

# EXHIBIT C – INSURANCE REQUIREMENTS

Submit Certificate of Insurance with the following information:

1.    Subcontractors must carry the following minimum limits of liability on this project:

   - General Liability – must be $1 million occurrence/$2 million aggregate
   - Auto – Must carry a $1 million limit
   - Umbrella – must carry a $1 million limit

2.    Subcontractors must carry standard workers compensation.  If evidence of sufficient workers compensation is not presented to Contractor, Contractor has the right to withhold 12.8% of all payments due to Subcontractor to cover such workers compensation expenses to become due to Contractor.

3.    Installation floater equal to the value of material and supplies going into the job.

4.    Liability policies must be endorsed naming the following as additional insured:

Contracting Systems, Inc. II
472 California Road, Suite 200
Quakertown, PA 18951

The United States of America
The United States Navy
The United States Marine Corps

5.    Contracting Systems, Inc. II must receive a copy of the Certificate of Insurance.

**Exhibit D – Applications for Payment**

1.    Use of AIA billing documents is mandatory.  You may attached a copy of your internal invoice, but if not accompanied by the AIA documents, it will be rejected.

2.    An extra sheet is attached for listing of your suppliers and/or sub-subcontracts along with their scheduled values, payments dues, etc.  Fill in exactly as you would fill in this sheet for yourself, only list your vendors.

3.    Four Waivers are enclosed for your use with your vendors.  Conditional releases from your vendors will need to be sent in with your billing.  An electronic version of these waivers is available in Excel format – for a copy, please email cbrandt@csi2.biz

4.    Billing is due on the 25th of month, projected out to the end of the month.  Late billing will be put into the following month's requisition to the owner.

5.    Only send one copy of your billing either by fax, email or U.S. mail to arrive by the due date.  Do not follow up faxed or emailed billing with originals in the U.S. mail.

# APPLICATION AND CERTIFICATE FOR PAYMENT AIA DOCUMENT G702 (Instructions on reverse side) PAGE ONE OF    PAGES

| TO OWNER: | PROJECT: | APPLICATION NO.: | Distribution to: |
| | | PERIOD TO: | ☐ OWNER |
| | | PROJECT NOS.: | ☐ ARCHITECT |
| | | | ☐ CONTRACTOR |
| FROM CONTRACTOR: | VIA ARCHITECT: | CONTRACT DATE: | ☐ |
| | | | ☐ |

CONTRACT FOR:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

1. ORIGINAL CONTRACT SUM................ $_____
2. Net change by Change Orders ............. $_____
3. CONTRACT SUM TO DATE (Line 1 ± 2)........ $_____
4. TOTAL COMPLETED & STORED TO DATE ...... $_____
   (Column G on G703)
5. RETAINAGE:
   a. _____% of Completed Work       $_____
      (Columns D + E on G703)
   b. _____% of Stored Material       $_____
      (Column F on G703)
      Total Retainage (Line 5a + 5b or
      Total in Column I of G703)................. $_____
6. TOTAL EARNED LESS RETAINAGE........... $_____
   (Line 4 less Line 5 Total)
7. LESS PREVIOUS CERTIFICATES FOR PAYMENT
   (Line 6 from prior Certificate) ............... $_____
8. CURRENT PAYMENT DUE ............... $_____
9. BALANCE TO FINISH, INCLUDING RETAINAGE
   (Line 3 less Line 6)                $_____

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By:_____    Date:_____

State of:
County of:
Subscribed and sworn to before
me this          day of

Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . . . $_____
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.)
ARCHITECT:
By:_____    Date:_____
This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA DOCUMENT G702 • APPLICATION AND CERTIFICATE FOR PAYMENT • 1992 EDITION • AIA® • ©1992 • THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006-5292 • WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution.     G702-1992

CAUTION: You should use an original AIA document which has this caution printed in red. An original assures that changes will not be obscured as may occur when documents are reproduced.

EXHIBIT D

# CONTINUATION SHEET

AIA DOCUMENT G703

PAGE   OF   PAGES

AIA Document G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

| A | B | C | D | E | F | G | % | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| | | | FROM PREVIOUS APPLICATION (D+E) | THIS PERIOD | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

EXHIBIT D

Job: _____

Subcontractor: _____

Sub-subcontractors & Suppliers

Application #_____

Date: _____

| A | B | C | D | | E | F | G | % | H | I |
|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | SUBCONTRACTOR NAME/ SCOPE OF WORK | SCHEDULED VALUE | WORK COMPLETED | | | MATERIALS | TOTAL | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE |
| | | | FROM PREVIOUS APPLICATION (D + E) | Release Attached for Prior Work | THIS PERIOD | PRESENTLY STORED (NOT IN D OR E) | COMPLETED AND STORED TO DATE (D+E+F) | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Totals | | | | | | | | | | |

I, _____ (name), _____ (title) of _____
(company name), hereby certify that this statement is a true and accurate portrait of my indebtedness on this project
thru the Application number and date stated above.

_____ (signature)    _____ (date)

Exhibit "A-1"

## CONDITIONAL WAIVER AND RELEASE UPON FINAL PAYMENT

Upon receipt by the undersigned of a check from _____

*(Your Customer)*

in the sum of    $ _____ payable to _____

*(amount of check)*                                        *(Payee or Payees of Check)*

and when the check has been properly endorsed and has been paid by the bank upon which it is drawn,

this document shall become effective to release any mechanic's lien, stop notice, or bond right the undersigned

has on the job of _____ located at _____

*(Owner)*                                                                              *(Job Description)*

This release covers the final payment to the undersigned for all labor, services, equipment or material furnished

on the job, except for disputed claims for additional work in the amount of   $ _____

Before any recipient of this document relies on it, the party should verify evidence of payment to the undersigned.


Date: _____                      0 _____

*(Company Name)*

By: _____

*(Signature)*

_____

*(Print Name and Title)*


Sworn to and subscribed before me this _____ day of _____, _____

Notary seal

_____

Notary Public

Commission expires: _____

Exhibit "A-2"

## CONDITIONAL WAIVER AND RELEASE UPON PROGRESS PAYMENT

Upon receipt by the undersigned of a check from _____
                                                                *(Your Customer)*

in the sum of   $ _____ payable to : _____
                   *(amount of check)*                            *(Payee or Payees of Check)*

and when the check has been properly endorsed and has been paid by the bank upon which it is drawn,

this document shall become effective to release any mechanic's lien, stop notice, or bond right the undersigned

has on the job of _____ located at _____
                        *(Owner)*                                                  *(Job Description)*

to the following extent.  This release covers a progress payment for labor, services, equipment, or material

furnished to _____ through _____ only  and does
                  *(Your Customer)*                                  *(Date)*

not cover any retentions retained before or after the release date; extras furnished before the release date for which payment has not been received; extras or items furnished after the release date.  Rights based upon work performed or items furnished under a written change order which has been fully executed by the parties prior to the release date are covered by this release unless specifically reserved by the claimant in this release.  This release of any mechanic's lien, stop notice, or bond right shall not otherwise affect the contract rights, including rights between parties to the contract based upon a rescission, abandonment, or breach of the contract, or the right of the undersigned to recover compensation for furnished labor, services, equipment, or material covered by this release if that furnished labor, services, equipment, or materials was not compensated by the progress payment.  Before any recipient of this document relies on it, said party should verify evidence of payment to the undersigned.

Date: _____                 0
                                                    _____
                                                            *(Company Name)*

                                            By: _____
                                                            *(Signature)*

                                                    _____
                                                            *(Print Name and Title)*

Sworn to and subscribed before me this _____ day of _____, _____

Notary seal

                                    _____
                                            Notary Public

                                    Commission expires: _____

Exhibit "B-1"

## UNCONDITIONAL WAIVER AND RELEASE UPON FINAL PAYMENT

The undersigned has been paid in full for all labor, services, equipment or material furnished to

_____ on the job of _____
      *(Your Customer)*                                     *(Owner)*

located at _____ and does hereby waive, and release any right
                             *(Job Description)*

to a mechanic's lien, stop notice, or any right against a labor and material bond on the job, except for

disputed claims for extra work in the amount of  $ _____ .

Date: _____

                                        _____
                                               *(Company Name)*

                          By: _____
                                               *(Signature)*

                                        _____
                                         *(Print Name and Title)*

---

"NOTICE TO PERSONS SIGNING THIS WAIVER:  THIS DOCUMENT WAIVES RIGHTS
UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP
THOSE RIGHTS.  THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT,
EVEN IF YOU HAVE NOT BEEN PAID.  IF YOU HAVE NOT BEEN PAID, USE THE
CONDITIONAL RELEASE FORM."

---

Sworn to and subscribed before me this _____ day of _____ , _____ .

Notary seal

                                _____
                                           Notary Public

                     Commission expires: _____

Exhibit "B-2"

## UNCONDITIONAL WAIVER AND RELEASE UPON PROGRESS PAYMENT

The undersigned has been paid and has received a progress payment in the sum of          $ _____

for labor, services, equipment, or material furnished to _____

on the job of _____ located at _____
                              *(Owner)*                                *(Job Description)*

and does hereby release any mechanic's lien, stop notice, or bond right that the undersigned has on the above referenced job to the following extent.  This release covers a progress payment for labor, services, equipment, or material furnished to _____ through _____
                                            *(Your customer)*                       *(Date)*
only and does not cover any retentions retained before or after the release date; extras or items furnished before the release date for which payment has not been received; extras or items furnished after the released date. Rights based upon work performed or items furnished under a written change order which been  fully executed by the parties prior to the release date are covered by this release unless specifically reserved by the claimant on this release.  This release of any mechanic's lien, stop notice, or bond right shall not otherwise affect the contract rights, including rights between parties to the contract based upon the rescission, abandonment, or breach of the contract, or the right of the undersigned to recover compensation for furnished labor, services, equipment, or material covered by this release if that furnished labor services equipment or materials was not compensated by the progress payment.

Date: _____            _____
                                                                            *(Company Name)*

                                                  By: _____
                                                               *(Signature)*

                                                               _____
                                                              *(Print Name and Title)*

> "NOTICE TO PERSONS SIGNING THIS WAIVER:  THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS.  THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID.  IF YOU HAVE NOT BEEN PAID, USE THE CONDITIONAL RELEASE FORM."

Sworn to and subscribed before me this _____ day of _____, _____.

Notary seal

                                     _____
                                            Notary Public

                            Commission expires: _____

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

**PAYROLL**
**(For Contractor's Optional Use; See Instructions, Form WH-347 Inst.)**
*Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.*

| NAME OF CONTRACTOR ☐   OR SUBCONTRACTOR ☐ | ADDRESS | | OMB No.: 1215-0149 Expires: 03/31/2003 |
|---|---|---|---|

| PAYROLL NO. | FOR WEEK ENDING | PROJECT AND LOCATION | PROJECT OR CONTRACT NO. |
|---|---|---|---|

| (1) NAME, ADDRESS, AND SOCIAL SECURITY NUMBER OF EMPLOYEE | (2) NO. OF WITHHOLDING EXEMPTIONS | (3) WORK CLASSIFICATION | O OR ST. | (4) DAY AND DATE HOURS WORKED EACH DAY | (5) TOTAL HOURS | (6) RATE OF PAY | (7) GROSS AMOUNT EARNED | (8) DEDUCTIONS FICA | WITH-HOLDING TAX | | | OTHER | TOTAL DEDUCTIONS | (9) NET WAGES PAID FOR WEEK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |
| | | | O | | 0.00 | | $0.00 | | | | | | | |
| | | | S | | 0.00 | | | | | | | | $0.00 | $0.00 |

We estimate that it will take an average of 56 minutes to complete this collection of information, including time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, ESA, U. S. Department of Labor, Room S3502, 200 Constitution Avenue, N. W., Washington, D. C. 20210.

FORM WH-347, Revised Nov. 1998 - FORMERLY SOL 184 - *PURCHASE THIS FORM DIRECTLY FROM THE SUPT. OF DOCUMENTS*

Date _____

I, _____
(Name of Signatory Party)                                    (Title)

do hereby state:

(1) That I pay or supervise the payment of the persons employed by

_____ on the
(Contractor or Subcontractor)

_____; that during the payroll period commencing on the
(Building or Work)

_____ day of _____, _____, and ending the _____ day of _____, _____,

all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said

_____ from the full
(Contractor or Subcontractor)

weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part 3 (29 CFR Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948, 63 Start. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. 276c), and described below:

_____

_____

_____

_____

(2) That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed.

(3) That any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, United States Department of Labor, or if no such recognized agency exists in a State, are registered with the Bureau of Apprenticeship and Training, United States Department of Labor.

(4) That:

    (a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS

      ☐ — in addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in Section 4(c) below.

(b) WHERE FRINGE BENEFITS ARE PAID IN CASH

    ☐ — Each laborer or mechanic listed in the above referenced payroll has been paid, as indicated on the payroll, an amount not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract, except as noted in Section 4(c) below.

(c) EXCEPTIONS

| EXCEPTION (CRAFT) | EXPLANATION |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

| REMARKS: |
|---|
|  |

| NAME AND TITLE | SIGNATURE |
|---|---|
|  |  |

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE 31 OF THE UNITED STATES CODE.

* U.S. G.P.O.:1997 519 691

Section 00800 - Special Contract Requirements

WAGE DETERMINATION
General Decision Number: PA080009 01/01/2010  PA9

Superseded General Decision Number: PA20070009

State: Pennsylvania

Construction Type: Building

Counties: Lehigh and Northampton Counties in Pennsylvania.


BUILDING ERECTION AND FOUNDATION EXCAVATION PROJECTS (does not
include residential construction consisting of single family
homes and apartments up to and including 4 stories)  EXCLUDING
SEWAGE AND WATER TREATMENT PLANT PROJECTS


| Modification Number | Publication Date |
|---|---|
| 0 | 02/08/2008 |
| 1 | 03/21/2008 |
| 2 | 04/11/2008 |
| 3 | 05/30/2008 |
| 4 | 06/20/2008 |
| 5 | 06/27/2008 |
| 6 | 07/04/2008 |
| 7 | 07/18/2008 |
| 8 | 08/08/2008 |
| 9 | 09/19/2008 |
| 10 | 12/19/2008 |
| 11 | 01/02/2009 |
| 12 | 02/06/2009 |
| 13 | 04/03/2009 |
| 14 | 05/01/2009 |
| 15 | 05/08/2009 |
| 16 | 06/05/2009 |
| 17 | 06/26/2009 |
| 18 | 07/17/2009 |
| 19 | 08/14/2009 |
| 20 | 10/02/2009 |
| 21 | 12/04/2009 |
| 22 | 01/01/2010 |

ASBE0023-005 06/29/2009

                              Rates      Fringes


Asbestos Workers/Insulator
(Includes the application of
all insulating materials,
protective coverings,
coatings and finishes to all

types of mechanical systems).....$ 29.88        18.83

BRPA0005-001 05/03/2009

|  | Rates | Fringes |
|---|---|---|
| BRICKLAYER......................$ 29.05 | | 13.77 |

BRPA0005-006 05/01/2009

|  | Rates | Fringes |
|---|---|---|
| TILE FINISHER...................$ 21.13 | | 12.92 |

BRPA0005-009 05/01/2009

|  | Rates | Fringes |
|---|---|---|
| TILE SETTER......................$ 25.11 | | 13.77 |

CARP0600-001 05/01/2009

|  | Rates | Fringes |
|---|---|---|
| CARPENTER (Including Drywall Hanging).........................$ 30.99 | | 19.67 |

CARP1823-004 05/01/2008

|  | Rates | Fringes |
|---|---|---|
| FLOOR LAYER:  CARPET (SOFT) FLOOR.............................$ 28.22 | | 19.78 |

CARP1906-005 07/01/2009

|  | Rates | Fringes |
|---|---|---|
| MILLWRIGHT......................$ 33.11 | | 23.44 |

ELEC0102-005 06/01/2009

NORTHAMPTON COUNTY (Remainder)

|  | Rates | Fringes |
|---|---|---|
| ELECTRICIAN......................$ 46.86 | | 24.02 |

ELEC0375-004 06/01/2009

LEHIGH, NORTHAMPTON (Allen, Hanover, Lehigh Townships; Boroughs of Bath,Freemansburg, Hellertown and the City of Bethlehem; the portion of Moore Township South of State Highway 946 and West of State Highway 987.  East Allen Township except the part

North of Bath Borough and East of State Highway 987 and Lower
Saucon Township West of a line following the Hecktown-Butztown
Road. South from Lower Nazareth Township through Butztown and
continuing to Middleton, along alternate U.S. Highway 22 to the
Eastern boundary of the Borough of Freemansburg, along this
boundary in a Southerly direction to the Bethlehem City line
between Bethlehem and Lower Saucon Township to the Northern
boundary of Hellertown and Lower Saucon Township to State
Highway 412 to Bucks County

|  | Rates | Fringes |
|---|---|---|
| ELECTRICIAN......................$ 36.74 | | 11.66 |

* ELEV0084-001 01/01/2010

|  | Rates | Fringes |
|---|---|---|
| ELEVATOR MECHANIC................$ 40.08 | | 20.04 |

FOOTNOTES:

A. VACATION CREDIT: Employer contributes 8% basic hourly rate
for 5 years or more of service as vacation pay credit, and
6% for 6 months to 5 years of service.

B. Eight Paid Holidays (provided employee has worked 5
consecutive days before and the working day after the
holiday): New Year's Day; Memorial Day; Independence Day;
Labor Day; Veteran's Day; Thanksgiving Day and the Friday
after Thanksgiving Day and Christmas Day.

* ENGI0542-017 05/01/2008

|  | Rates | Fringes |
|---|---|---|
| Power equipment operators: | | |
| Bulldozer, Forklift, | | |
| Gradall, Loader, Paver, | | |
| and Tractor................$ 27.66 | | 15.73+A |
| Crane......................$ 27.95 | | 15.81+A |
| Oiler......................$ 22.47 | | 13.95+A |

FOOTNOTE:

A:  PAID HOLIDAYS: Washington's Birthday, Good Friday,
Memorial Day, Labor Day, Presidential Election Day,
Veterans Day; Thanksgiving Day and Christmas Day.

**TOXIC/HAZARDOUS WASTE REMOVAL***

Add 20 per cent to basic hourly rate for all classifications

IRON0036-001 07/01/2009

|  | Rates | Fringes |
|---|---|---|

Ironworker, reinforcing and
structural

| Projects over $25 million...$ 33.55 | 22.42 |
| Projects under $25 million..$ 33.05 | 22.42 |

LABO1174-001 05/01/2009

|  | Rates | Fringes |
|---|---|---|

Laborers:

| Brick Mason Tender and |
| Plasterer Tender............$ 24.15 | 11.98 |
| Unskilled..................$ 22.80 | 11.98 |

PAIN0252-005 06/01/2009

|  | Rates | Fringes |
|---|---|---|

GLAZIER..........................$ 27.51     13.08

PLAS0592-025 05/01/2009

|  | Rates | Fringes |
|---|---|---|

CEMENT MASON/CONCRETE FINISHER...$ 25.60     16.33
PLASTERER.......................$ 26.43     15.50

PLUM0420-005 05/01/2009

|  | Rates | Fringes |
|---|---|---|

PIPEFITTER (Including HVAC
pipe work)......................$ 37.76     24.76

PLUM0690-005 11/01/2009

|  | Rates | Fringes |
|---|---|---|

PLUMBER..........................$ 34.50     22.79

* SFPA0669-001 01/01/2010

|  | Rates | Fringes |
|---|---|---|

SPRINKLER FITTER................$ 33.85     17.60

SHEE0019-005 06/01/2009

|  | Rates | Fringes |
|---|---|---|

Sheet metal worker (Including
HVAC Duct Work)..................$ 29.56          28.85+A

FOOTNOTE: A.  Paid Holiday:  Election Day.
--------------------------------------------------
   SUPA2000-002 02/25/2000

                   Rates  ·   Fringes

PAINTER (Brush and Roller).......$ 17.00          6.95

Pipelayer.......................$ 12.65       1.08

Power Equipment Operator
     Backhoe....................$ 15.83       5.29 ·
     Excavotor..................$ 13.52       1.21
     Roller.....................$ 13.46       1.24

ROOFER, Including Built Up,
Composition and Single Ply
Roofs...........................$ 15.31       5.18
--------------------------------------------------

WELDERS - Receive rate prescribed for craft performing
operation to which welding is incidental.
==================================================

Unlisted classifications needed for work not included within
the scope of the classifications listed may be added after
award only as provided in the labor standards contract clauses
(29CFR 5.5 (a) (1) (ii)).

--------------------------------------------------

In the listing above, the "SU" designation means that rates
listed under the identifier do not reflect collectively
bargained wage and fringe benefit rates.  Other designations
indicate unions whose rates have been determined to be
prevailing.

--------------------------------------------------

## WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can
be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on
  a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests

for summaries of surveys, should be with the Wage and Hour
Regional Office for the area in which the survey was conducted
because those Regional Offices have responsibility for the
Davis-Bacon survey program. If the response from this initial
contact is not satisfactory, then the process described in 2.)
and 3.) should be followed.

With regard to any other matter not yet ripe for the formal
process described here, initial contact should be with the
Branch of Construction Wage Determinations. Write to:

> Branch of Construction Wage Determinations
> Wage and Hour Division
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an
interested party (those affected by the action) can request
review and reconsideration from the Wage and Hour Administrator
(See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

> Wage and Hour Administrator
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

The request should be accompanied by a full statement of the
interested party's position and by any information (wage
payment data, project description, area practice material,
etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an
interested party may appeal directly to the Administrative
Review Board (formerly the Wage Appeals Board). Write to:

> Administrative Review Board
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

END OF GENERAL DECISION

**EXHIBIT E**

## SUBCONTRACTORS WARRANTY FORM

**Project:** Navy/Marine Corps
Reserve Training Center
Lehigh Valley, PA

**Subcontractor:** Clipper Pipe and Service
PO Box 148
Crum Lynne, PA 19022
610/872-9067

**Architect:** Fay, Spofford & Thorndike, LLC          **Owner:** NAVFAC MidAtlantic

**General Contractor:** Contracting Systems, Inc. II

We hereby warrant all HVAC and all Mechanical work under our contract at the above project to be in accordance with the project drawings and specifications including modifications by Owner, Architect and General Contractor, and to be free from improper workmanship, free from faulty materials, and to remain free from injury from proper and usual wear, and we do hereby agree to replace or correct, without cost to the Owner and/or General Contractor, such work as may be found to be improper or imperfect, and to make good all damage caused to other work or materials due to such required replacement or correction, and to remove all damaged and/or uncorrectable work from the Owner's property as necessary.

We further agree to make or have made, at no extra cost to the Owner or General Contractor, any materials or equipment partially or completely covered by manufacturer's warranty which require corrections, or which were not installed in accordance with the drawings and specifications, at any time during the period of the manufacturer's warranty.

All corrective work shall be done during regular working hours and shall be done so as not to inconvenience the Owner.

This warranty shall be in effect for a period of 1 year from _____, the date of issuance of the Architect's Certificate of Substantial Completion.

Subcontractor: Clipper Pipe and Service

By: _____

Title: _____

Date: _____

## EXHIBIT F - JOB-SPECIFIC REQUIREMENTS
## NAVY / MARINE CORPS RESERVE TRAINING CENTER

1. The general conditions of this project, as respects submittals, certified payroll, security procedures, quality control, etc. is made part of your Subcontract. A copy of this section of the spec book is located at www.csi2planroom.com, NMCRC Lehigh Valley, Division 1. Please become familiar with the procedures and restrictions.
2. There are no third party rights on this project. You and your subs and/or suppliers are without privity of the Contract to the Department of the Navy. By signing this Subcontract, you acknowledge and agree that no rights are afforded to you or any third-tier parties with which you contract for this project. In addition, you agree to notify any such subcontractors and/or suppliers in writing of this provision.

   Since there are no third party or lien rights, this project is bonded. A copy of the Contract Bond is available upon request.

3. Smoking in designated areas only
4. Working hours are 7:00 AM to 5:00 PM
5. No deliveries between the hours of 6:30 to 8:00 AM and 3:30 to 5:00PM without prior approval.
6. Hard hats and safety glasses required. No stilts. Become familiar with the safety protocols.
7. This is a prevailing wage job (see current rates attached to Exhibit D). Weekly payroll certification is mandatory.
8. We require submission of your subcontractors and suppliers names, scope of work and scheduled value.
9. Security procedures must be followed. Request for Personnel & Vehicle passes must be submitted together with your Certificate of Insurance and SF-1413 (Statement and Acknowledgement). It can take up to 21 days to receive your passes.
10. All visitors/deliveries must sign in at the job trailer
11. Billing is due in our office on the 20th of the month, projected out to the end of the month.
11. Discrimination of any kind is prohibited.
13. As a unit of the U.S. Government, the Navy / Marine Corps are exempt from sales tax.

### Documentation/Procedure Checklist – All prior to start of work
1. Send certificate of insurance per Exhibit C
2. Send completed W9
3. Return both copies of the Subcontract Agreement, signed.
5. Submit your schedule of values for approval.
6. Submit your list of subcontractors and suppliers with scheduled value for each.
8. Submittals, Certifications as applicable to your work.
10. Apply for passes

### Monthly Submissions with your AIA Billing Document
1. AIA Billing Documents (Front and Continuation Sheets) per approved breakdown
2. List of Subcontractors/Suppliers with scheduled values, amounts paid, amounts due and releases for amounts already paid
3. Weekly Certified Payroll (WH-347)

| STATEMENT AND ACKNOWLEDGMENT | OMB No.: **9000-0014** Expires: 5/31/2011 |
|---|---|

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat, (VIR), Regulatory and Federal Assistance Division, GSA, Washington, DC 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0014), Washington, DC 20503.

## PART I - STATEMENT OF PRIME CONTRACTOR

| 1. PRIME CONTRACT NO. | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER | | |
|---|---|---|---|---|
| N40085-10-C-9436 | | | | |

| 4. PRIME CONTRACTOR | | | 5. SUBCONTRACTOR | | |
|---|---|---|---|---|---|
| a. NAME Contracting Systems, Inc. II | | | a. NAME | | |
| b. STREET ADDRESS 472 California Road, Suite 200 | | | b. STREET ADDRESS | | |
| c. CITY Quakertown | d. STATE PA | e. ZIP CODE 18951 | c. CITY | d. STATE | e. ZIP CODE |

6. The prime contract [x] does, [ ] does not contain the clause entitled "Contract Work Hours and Safety Standards Act -- Overtime Compensation."

7. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on the date shown in Item 2 to the subcontractor identified in Item 5 by the following firm:

a. NAME OF AWARDING FIRM

Contracting Systems, Inc. II

b. DESCRIPTION OF WORK BY SUBCONTRACTOR

| 8. PROJECT | 9. LOCATION | |
|---|---|---|
| Navy/Marine Corps Recruiting Training Center | Lehigh Valley, PA | |
| 10a. NAME OF PERSON SIGNING | 11. BY *(Signature)* | 12. DATE SIGNED |
| 10b. TITLE OF PERSON SIGNING | | |

## PART II - ACKNOWLEDGMENT OF SUBCONTRACTOR

13. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

| | |
|---|---|
| Contract Work Hours and Safety Standards Act - Overtime Compensation - (If included in prime contract see Block 6) | Davis-Bacon Act Apprentices and Trainees Compliance with Copeland Act Requirements |
| Payrolls and Basic Records | Subcontracts (Labor Standards) |
| Withholding of Funds | Contract Termination - Debarment |
| Disputes Concerning Labor Standards | Certification of Eligibility |
| Compliance with Davis-Bacon and Related Act Regulations | |

14. NAME(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

| | | | |
|---|---|---|---|
| A | | C | |
| B | | D | |

| 15a. NAME OF PERSON SIGNING | 16. BY *(Signature)* | 17. DATE SIGNED |
|---|---|---|
| 15b. TITLE OF PERSON SIGNING | | |

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

**STANDARD FORM 1413** (REV. 7/2005)
Prescribed by GSA/FAR (48 CFR) 53.222(e)

## EXHIBIT G
## HAZARD COMMUNICATIONS PROGRAM

As per OSHA requirements regarding Hazard Communications, please forward MSDS sheets to the CSI² project superintendent for placement in the project central file.

Also, you should maintain a copy of the MSDS on-site with your project foreman, as the company working with the materials is responsible to provide MSDS to its employees.

# A1A Document G702 - 1992

## *Application and Certificate for Payment*

| | | |
|---|---|---|
| TO OWNER: Contracting Systems, Inc II | PROJECT: NMRC Allentown, PA | APPLICATION NO: 7 |
| 472 California Road | CSI Contract 721.10-0012 | PERIOD TO: 1/30/2012 |
| Quakertown, PA 18951 | | CONTRACT FOR: HVAC |
| FROM CONTRACTOR: Clipper Pipe & Service, Inc | VIA ARCHITECT: | CONTRACT DATE: 1/14/2011 |
| PO Box 148 | | PROJECT NOS: CPS 2827 |
| Crum Lynne, PA 19022 | | |

Distribution to:
- OWNER ☐
- ARCHITECT ☐
- CONTRACTOR ☐
- FIELD ☐
- OTHER ☐

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM............................................................. | $ | 546,000.00 |
| 2. Net change by Change Orders............................................................ | $ | 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1+2)........................................... | $ | 545,000.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703)............ | $ | 545,000.00 |
| 5. RETAINAGE: | | |
| a.  10  % of Completed Work | | |
| ( Column D + E on G703) | $ 54,500.00 | |
| b.  10  % of Stored Material | | |
| ( Column F on G703) | $ 0.00 | |
| Total Retainage (Lines 5a + 5b or Total in Column I of G703)...................... | $ | 54,500.00 |
| 6. TOTAL EARNED LESS RETAINAGE................................................. | $ | 490,500.00 |
| ( Line 4 Less 5 Total) | | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT.......................... $ | | 446,352.21 |
| ( Line 6 from prior Certificate) | | |
| 8. CURRENT PAYMENT DUE............................................................... | $ | 44,147.79 |
| 9. BALANCE TO FINISH INCLUDING RETAINAGE | | |
| ( Line 3 less line 6) | $ | 54,500.00 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | -$ 0.00 |
| Total approved this Month | $ 0.00 | -$ 0.00 |
| TOTALS | $ 0.00 | -$ 0.00 |
| Net Changes by Change Order | $ | 0.00 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for payment has been completed in accordance with the Contract documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payments were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: *William C. [signature]* Date: 2-22-12

State of: PA

County of: *Delaware*

Subscribed and sworn to before
me this 22nd day of Feb 2012

Notary Public *[signature] Kelchner*

My Commission expires: 12-15-13

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lillianann Kelchner, Notary Public
Ridley Twp., Delaware County
My Commission Expires Dec. 15, 2013
Member, Pennsylvania Association of Notaries

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of  the Architect's knowledge, information and belief the Work has progressed as indicated, the quantity of the Work is in accordance  with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED.................................................................$ _____

*(Attached explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

ARCHITECT:

By: _____ Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED  is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract

EXHIBIT " C"

Copyright 2006 by computerized-aia-g702-g703-payment-software.com. AIA is a registered trademark. Computerized-aia-g702-g703-payment-software.com is not affiliated with AIA, nor do we claim to be.

# A1A   Document G703

## Continuation Sheet

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT,
containing Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line item may apply.

APPLICATION NO:     7
APPLICATION DATE:     1/25/2012
PERIOD TO:     1/31/2012
ARCHITECT'S PROJECT NO:     0

| A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | | |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D+E) | THIS PERIOD | | | % (G / C) | BALANCE TO FINISH (C - G) | RETAINAGE (IF VARIABLE RATE) |
| 1 | RTU 1, 2 ,3 | $58,956.00 | $58,956.00 | $0.00 | $0.00 | $58,956.00 | 100.0 | $0.00 | $5,895.60 |
| 2 | HVAC Bldg Controls | $98,400.00 | $63,960.00 | $34,440.00 | $0.00 | $98,400.00 | 100.0 | $0.00 | $9,840.00 |
| 3 | (10) Gas Unit Heaters | $24,020.00 | $24,020.00 | $0.00 | $0.00 | $24,020.00 | 100.0 | $0.00 | $2,402.00 |
| 4 | (2) Thru The Wall Units PTAC | $3,596.00 | $3,596.00 | $0.00 | $0.00 | $3,596.00 | 100.0 | $0.00 | $359.60 |
| 5 | (1) Mini Split | $5,044.00 | $5,044.00 | $0.00 | $0.00 | $5,044.00 | 100.0 | $0.00 | $504.40 |
| 6 | Infared Heat Units | $8,318.00 | $8,318.00 | $0.00 | $0.00 | $8,318.00 | 100.0 | $0.00 | $831.80 |
| 7 | Electric Unit Heaters (6) | $4,300.00 | $4,300.00 | $0.00 | $0.00 | $4,300.00 | 100.0 | $0.00 | $430.00 |
| 8 | Hydronic Unit Heaters (10) | $16,825.00 | $16,825.00 | $0.00 | $0.00 | $16,825.00 | 100.0 | $0.00 | $1,682.50 |
| 9 | Fin Tube Radiation | $13,314.00 | $13,314.00 | $0.00 | $0.00 | $13,314.00 | 100.0 | $0.00 | $1,331.40 |
| 10 | Circulating Pumps Equipment | $9,179.00 | $9,179.00 | $0.00 | $0.00 | $9,179.00 | 100.0 | $0.00 | $917.90 |
| 11 | Boiler Equipment | $21,500.00 | $21,500.00 | $0.00 | $0.00 | $21,500.00 | 100.0 | $0.00 | $2,150.00 |
| 12 | Bldg Hydronic Piping | $41,876.00 | $41,876.00 | $0.00 | $0.00 | $41,876.00 | 100.0 | $0.00 | $4,187.60 |
| 13 | Mechanical Room Piping | $10,764.00 | $10,764.00 | $0.00 | $0.00 | $10,764.00 | 100.0 | $0.00 | $1,076.40 |
| 14 | Pipe & Duct Insulation | $30,663.00 | $30,663.00 | $0.00 | $0.00 | $30,663.00 | 100.0 | $0.00 | $3,066.30 |
| 15 | Sheet Metal | $88,101.00 | $88,101.00 | $0.00 | $0.00 | $88,101.00 | 100.0 | $0.00 | $8,810.10 |
| 16 | Louvers and Fans | $17,131.00 | $15,417.90 | $1,713.10 | $0.00 | $17,131.00 | 100.0 | $0.00 | $1,713.10 |
| 17 | Vehicle/Garage Equipment | $76,191.00 | $76,191.00 | $0.00 | $0.00 | $76,191.00 | 100.0 | $0.00 | $7,619.10 |
| 18 | Crane/Rental Equipment | $3,922.00 | $3,922.00 | $0.00 | $0.00 | $3,922.00 | 100.0 | $0.00 | $392.20 |
| 19 | Startup/Training | $6,200.00 | $0.00 | $6,200.00 | $0.00 | $6,200.00 | 100.0 | $0.00 | $620.00 |
| 20 | Testing/Balancing | $6,700.00 | $0.00 | $6,700.00 | $0.00 | $6,700.00 | 100.0 | $0.00 | $670.00 |
| | | $545,000.00 | $495,946.90 | $49,053.10 | $0.00 | $545,000.00 | | $0.00 | $54,500.00 |

Copyright 2006 by   computerized-aia-g702-g703-payment -software.com. AIA is a registered trademark. Computerized-aia-g702-g703-payment -software.com is not affiliated with AIA, nor do we claim to be.



# *CLIPPER PIPE & SERVICE*

May 22, 2012

Mr. Kerry Enders

Liberty Surety First

275 Grandview Avenue, Suite 102

Camp Hill, PA  17011

Copy John Clarke CSI

Dear Mr. Enders,

This is to inform you that Clipper Pipe & Service Inc, a first tier contractor on Federal contract N40085-10-C-9436 is filing a claim against the payment bond for the outstanding amount of $ 174,889.91.
The work has been accepted and payment has been made by the government to:

Contracting Systems Inc.
427 California Road
Quakertown, PA 18951

Clipper Pipe & Service Inc has paid and obtained release and waiver of leans from all of our material suppliers and subcontractors. This information has been provided to Contracting Systems Inc. but they have not made payment on our past due invoices.

Please let me know how you would like to resolve this situation.

Sincerely,


William C. Jimick
President

P.O. Box 148. Crum Lynne, PA   19022-0148. (610) 872-9067. Fax (610) 872-9463

EXHIBIT ″D″

## PROOF OF CLAIM – CONSTRUCTION CONTRACT

Filing does not constitute acceptance or waiver by the Surety.

State of _PENNSYLVANIA_          SS          Claim No. _____ 4035555.5 _____

County of _DELEWARE_

The undersigned, being duly sworn, deposes and says;

I hold the position shown below, and in such position I am familiar with the books and business of the claimant and am authorized to make this affidavit. The facts set out below are true.

| ALL ITEMS BELOW MUST BE COMPLETED, IF NONE, OR NOT APPLICABLE, SO STATE, | |
|---|---|
| Name and address of claimant<br>_CLIPPER PIPE & SERVICE INC_<br>_P.O. BOX 148_<br>_CRUM LYNNE, PA 19022_ | Name and address of debtor (YOUR CUSTOMER)<br>_CONTRACTING SYSTEMS INC. II_<br>_472 CALIFORNIA ROAD_<br>_QUAKERTOWN, PA 18951_ |
| Affiant's name and position with claimant<br>_WILLIAM C. SIMICH   PRESIDENT_ | Name and address of surety's principal (IF NOT CUSTOMER) |
| Legal status of claimant<br>☑ Corporation   ☐ Partnership   ☐ Individual | |

Description of services or materials claimed for, and dates when supplied or delivered
_START  5-30-11                       LAST DAY  2-28-12 (JOB NOT COMPLETE_
_                                              AS OF 6-8-12 )_

FIRST AND LAST DAY LABOR AND/OR MATERIALS SUPPLIED (REQUIRED):

| Project where services or materials used<br>_NMRC NAMC RESERVE TRAINING CENTER_<br>_ALLENTOWN, PA_ | ☑ Subcontract   ☐ Purchase order   ☐ Open Account<br>☐ Other _____<br>☐ Oral   ☐ Written (attach copy) |
|---|---|

| NOTICE GIVEN | | | Computation of Claim | |
|---|---|---|---|---|
| TO | DATE | HOW | | |
| Surety | _5-22-12_ | _REG LETTER_ | Agreed Price | $ _545,000.00_ |
| | _5-22-12_ | _TELECON_ | Extras or adjustments | $ _0_ |
| Owner | | | Sub Total | $ _545,000.00_ |
| | _5-18-12_ | _E-MAIL_ | Paid on account or credits | $ _370,110.09_ |
| Principal | _5-22-12_ | _REG LETTER_ | Net Claim | $ _174,889.91_ |

Collateral security held _10%_

Has this claim been assigned? To whom?  _NO_

Liens or encumbrances on claim (AMOUNT, DATE)  _NONE_

Amount due from claimant to others on this job. To whom?

A copy of the subcontract or purchase order and copies of delivery tickets or other evidences of receipt of the materials or services are attached and made a part of this affidavit.

A copy of each written notice alleged to have been given is attached, and made a part of this affidavit.

This affidavit is made to induce Surety, on a bond covering the above mentioned contract, to settle the claim herein set forth.

_William C. Simich_
(Signature of person making affidavit)

Signed and sworn to before me on _May 30_____, 20 _12_, said subscriber being known to me and known by me to be the person described in the above instrument.

_Lillianann Ketchmer_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lillianann Ketchmer, Notary Public
Ridley Twp., Delaware County
My Commission Expires Dec. 15, 2013
Member, Pennsylvania Association of Notaries

Proof of Claim Construction Contract

**EXHIBIT " E"**